35138. HOUSING AUTHORITY OF THE CITY OF ATLANTA v. SOUTHERN RAILWAY COMPANY et al.

JORDAN, Justice.

We granted certiorari to review the Court of Appeals' decision allowing the condemnee Southern Railway to recover lost profits and attorney fees in this condemnation proceeding brought by the Housing Authority as condemnor. See *Housing Authority of the City of Atlanta v. Southern R. Co.,* 150 Ga. App. 4 (256 SE2d 606) (1979). In its opinion, the Court of Appeals held that since Southern had shown through ample evidence that it had "suffered a business loss (whether partial or total), that the business was unique to Southern and the profits were . . . not . . . remote or speculative . . ." it was entitled to recover the $132,500 the jury had awarded it for lost profits.

The Housing Authority contends that the Court of Appeals erred since Southern had, as a matter of fact, regained part of its business lost as a result of the condemnation of the Candler Warehouse by continuing to serve relocated, "old" customers at new, nearby locations.

As Southern had regained part of its business, and hoped to regain it all, and since the Housing Authority does not contest the jury's award for track removal and relocation costs, the Housing Authority maintains that Southern already has been made whole and that, therefore, no recovery for lost profits is authorized. The Court of Appeals concluded, though, that Southern had irrevocably lost its right to do business with its customers at the Candler Warehouse, and that the destruction of this right entitled Southern to recover lost profits despite the fact that some of its lost customers relocated and remained customers of Southern.

1.A. A central issue in this appeal is the definition of "uniqueness" and whether the facts of this case meet that definition. Southern maintains that its easement into the Candler Warehouse was of such peculiar value to it and that the building itself coupled with the volume of business done there was, in every sense, one-of-a-kind. Actually the definition of uniqueness is very simple: Since valuing property at its "fair market value" presupposes a willing buyer and a willing seller, properties are "unique" such that fair market value will not afford just and adequate compensation when they are not of a type generally bought or sold in the open market. 4 Nichols on Eminent Domain (3rd Ed. 1978) 12-533, § 12.32(1). In other words unique property is simply property which must be valued by something other than the fair market value standard.

"Strictly speaking, there are three recognized techniques for determining market value: replacement cost new less depreciation, income, and comparable sales." *Housing Authority of the City of Atlanta v. Troncalli,* 111 Ga. App. 515 (142 SE2d 93) (1965). "Unique" property is measured by a variety of non-fair market methods of valuation, including the cost and income methods. Nichols, supra, at (3) pp. 12-562. The testimony of one of Southern's expert witnesses was that Southern's easement had no fair market value, and the Housing Authority argued to the court and to the jury that this evidence was in its favor. Therefore, one of the non-fair market value methods should be used, since both parties rely on this opinion which demonstrates that the property

interest is unique as a matter of law.

The income approach is defined as "converting reasonable or actual income at a reasonable rate of return (capitalization rate) into an indication of value." Nichols, supra at (3)(c) p. 12-577. A real estate appraiser who had made a study of the Candler Warehouse facility for Southern was questioned about his calculation of the value of the condemned easement, and he gave the following answer: "[I]f I were estimating the value of [this facility] in use [to Southern], certainly I would look at the net that is being generated by virtue of this particular facility and then capitalize that over a reasonable period of time of the expectancy that I might receive that net income."

The jury was presented with testimony concerning the income method of valuation, one of the acceptable non-fair market value methods. As the Court of Appeals noted, the amount awarded Southern for lost profits was within the figures mentioned representing a range of expected loss, and the jury chose a sum to award. It was not incorrect to instruct the jury on lost profits as a means of awarding just and adequate compensation because the income approach necessarily takes into account what future earnings would be were the property interest not extinguished, which Southern's was. Once a condemnee gets over the hurdle of proving the property to be "unique," proving damages by an alternative, non-fair market value method is the sole remaining burden, and a question for the jury.

B. The Housing Authority argues further that allowing Southern lost profits for the destruction of a unique property interest is contrary to the facts and the law in this case since it will receive, in essence, a "double recovery" as it has reclaimed much of its "lost" business. We perceive this argument actually to be as follows: Assuming a charge on lost profits was authorized, how could the jury have been authorized to award Southern relocation costs (moving its tracks from the condemned easement to another location where it could continue to serve both old and new customers) and, at the same time, lost profits for business irrevocably lost when the evidence indicated that Southern was serving some of its same

customers at other warehouses?

The facts of this case are basically undisputed. The Housing Authority maintains that this question is one of law, and that, as a matter of law, the trial court should not have charged the jury on both relocation costs and lost profits, since, to a certain extent, the two terms are mutually exclusive. In other words, if a condemnor is compelled to spend a certain amount of money to relocate a condemned business where it can continue to operate, it cannot also be compelled to compensate the condemnee for a total destruction of its business in the form of lost profits for the expected duration of the condemned business (assuming the condemned property right to have been unique) when the condemnee will simply begin reclaiming those lost profits in the form of new business profits. The relocation costs award must offset the lost profits award, then, according to the Housing Authority, and as the trial court did not charge this to the jury, the case should be reversed.

The trial court did charge the following: "I further charge you, ladies and gentlemen, that a mere temporary loss of profits associated with the extinguishment by condemnation of Condemnee's property interest is not a proper element for consideration in determining just and adequate compensation." As applied to the facts of this case, a reasonable juror could certainly have understood the court to mean that no recovery should be allowed Southern merely for an interruption of its business while it moved to another location, but that Southern had to have irrevocably lost something of value that could not be duplicated elsewhere. The Housing Authority would have to pay for relocation and for that amount of lost business that Southern would never recover. The jury had the facts and a correct charge on the law, and we affirm the Court of Appeals in upholding its award.

2. We must reverse the Court of Appeals' holding regarding attorney fees, however. See *Dept. of Transp. v. Kendricks*, 244 Ga. 613 (1979).

*Judgment affirmed in part; reversed in part. All the Justices concur.*

ARGUED SEPTEMBER 10, 1979 — DECIDED JANUARY 24, 1980 —

REHEARING DENIED FEBRUARY 19, 1980.

*Kidd, Pickens & Tate, Charles M. Kidd, Woodrow W. Vaughn, Jr.,* for appellant.

*Greene, Buckley, DeRieux & Jones, Burt DeRieux, Thomas B. Branch, III, Eileen M. Crowley,* for appellees.