### 65186. MACON-BIBB COUNTY WATER & SEWERAGE AUTHORITY v. REYNOLDS et al.

QUILLIAN, Presiding Judge.

Condemnor, Macon-Bibb County Water and Sewerage Authority, appeals from a jury verdict and judgment for the condemnees, W. R. and Wachula Reynolds. Mr. and Mrs. Reynolds owned approximately 37 acres of land at the end of Taylor Terrace Road in Bibb County. The street ended at the cul-de-sac on which the Reynolds home was located. The Reynolds property on the east was bisected by the Southern Railroad in a northerly-southerly direction. Approximately 24.5 acres was on the western side of the railroad where the Reynolds home was located and 12.5 acres was located on the east side of the railroad and was bounded on the east by the Ocmulgee River. The acreage along the river was approximately 2,070 feet in length and varied in depth from the river to the railroad. The Reynoldses prized their riverfront property for its privacy and recreational usage. Mr. Reynolds stated that his family used the land almost daily.

The Macon-Bibb County Water and Sewerage Authority condemned a permanent 25 foot sewer easement, and a temporary 60 foot construction easement, across the entire 2,070 feet of the riverfront property between the railroad and the river. A special master made an award of $2,300 for the taking of the easement with no consequential damages to the remainder of the property. An appeal was made to the Superior Court of Bibb County and the condemnor brings this appeal from the jury verdict for $6,000 and judgment taken on the verdict. *Held:*

1. The condemnor contends the trial court erred in overruling its motion to limit the determination of compensation for the condemned land to the interest of Mrs. Reynolds. We do not agree. The 12.5 acres of land along the river were divided into two tracts. One tract, consisting of 1.29 acres, belonged to Mr. and Mrs. Reynolds as tenants in common. The remainder of the 12.5 acres was exclusively owned by Mr. Reynolds. The condemnor chose to condemn both parcels in one action, although ownership of each parcel was different and only one figure was arrived at for both parcels. Upon receipt of the award of the special master, dated May 13, 1981, counsel for the Reynoldses filed an appeal to the Superior Court of Bibb County — with the date of filing being May 22, 1981, and the caption depicting the County Water and Sewerage Authority as Plaintiff and a Tract of Land in Land Lot 323 of the 13th District of Bibb County, and Mr. and Mrs. Reynolds, and the Tax Commissioner and Probate Judge, as defendants. The body of the appeal stated: "Now comes Mrs.

Wachula Reynolds, *condemnee* in the above styled matter, and being dissatisfied with the award . . . enters *their* appeal . . ." (Emphasis supplied.) On December 15, 1981, counsel for the Reynoldses filed a motion to amend the notice of appeal to add the name of Mr. Reynolds. Counsel's attached affidavit showed Mr. Reynolds "was always a party to the appeal, but due to clerical error and oversight his name was omitted from the first line of the paragraph asking for the appeal of said decision." The trial court approved the amendment. We find no error.

In *Hamilton Mtg. Corp. v. Bowles,* 142 Ga. App. 882 (1) (237 SE2d 198), the original notice of appeal to this Court named only Hamilton Mortgage Corporation as the appellant even though an undivided 98.77% interest in a deed to secure debt in the realty involved in the litigation had been assigned to the Hamilton National Bank of Chattanooga, and the Bank had been a party to the trial court action for confirmation of sale under the deed to secure debt to the Bank. The trial court denied confirmation and appeal followed. This court permitted Hamilton National Bank to be added as an appellant, after time for notice of appeal had expired, on counsel's affidavit that it was always the intent of the Bank to appeal the ruling but due to clerical error and oversight its name was omitted from the original notice of appeal. In the instant case, Mr. Reynolds owned 85% of the land exclusively and was a joint tenant in the remaining 15% — which the condemnor had chosen to condemn in one action, with one figure being given by the special master for both parcels. In view of the stated intent in the body of the appeal to "enter their appeal," and the fact that the condemnor chose to condemn both parcels in one action and the special master reached one figure for both parcels in which Mr. Reynolds owned 85% exclusively and was a tenant in common in the remaining 15%, we find the ruling of the trial court not to.be error. See *Ramey v. O'Byrne,* 121 Ga. 516, 518 (1) (2) (49 SE 595); *Dooley v. Scoggins,* 208 Ga. 200 (1) (66 SE2d 62).

2. The admission of evidence that establishment of a sewer line easement across the condemnees' property would make their property more accessible to trespassers, "dune buggies, motorcycles, gocarts and the like," is enumerated as error. Condemnees' expert on value, Mr. Stokes, testified that riverfront property, like the condemnees,' is very desirable and that he would enjoy it because of "the serenity, the quietness." He found the 60 foot clear-cut construction easement through 100% wooded riverfront property to be a detriment and gave as an example that the morning he testified at this trial he had shown some timberland to a client and they had driven their pick-up truck over an easement right-of-way across

someone's land to view the property. Mr. Reynolds testified that this property is valuable to him because "I just like to be isolated and be by myself, and get away from all of it . . . Down there you are away from it all . . . We are on a dead-end street . . . There is no way anybody could get in there unless they come up the railroad track or come down by my house, and that's what I like about it. And I like it like it is, and if they do anything to it to tear it up — dune buggies coming up there, people are going to be coming up that [easement] line like all of Georgia Power and gas lines . . ." Following objection, condemnees' counsel explained that the testimony was offered to show "that makes that land valuable to him, and the uses he makes of it. And if his seclusion and privacy is part of it, he has a right to testify to that." Mr. Reynolds said that before the condemnation, this land was secluded and was for his family's personal and private use, and they used it on a daily basis. He stated that he would not sell his river-front property because "I don't want people in there behind me. That's why I got it. Privacy." We find such testimony to be admissible.

The legal concept of a right to privacy was first espoused in an article in 4 Harvard Law Review 193, in 1890, entitled, "The Right to Privacy," by Samuel D. Warren and Louis D. (later U. S. Supreme Court Justice) Brandeis. It has been said that this one article "enjoys the unique distinction of having synthesized at one stroke a whole new category of legal rights and of having initiated a new field of jurisprudence." 62 AmJur2d 678, Privacy, § 2. After the authors had discussed earlier efforts of the law to protect personal rights of the individual, as the "right to life," they concluded that the scope of such right had been broadened "to mean the right to enjoy life — the right to be let alone . . ." 4 Harv. L. R. at 193. The right of privacy has been described as not one of a right to secrecy, but as the right to define one's circle of intimacy. Briscoe v. Reader's Digest Assn., 4 Cal 3d 529 (483 P2d 34), 57 ALR3d 1. The Supreme Court of this state was among the first to legally sanction such right of privacy. *Pavesich v. New England Life Ins. Co.,* 122 Ga. 190 (2) (50 SE 68) (1904).

No one would deny that a panoramic or scenic view afforded by certain realty is an element to be included in assessing value. 4 Nichols on Eminent Domain 12-294, § 12.314. In like manner, privacy afforded by location of realty, like a mountaintop, riverfront or oceanfront location, can also be a factor in determining market value of such realty. In determining market value of land taken or damaged in an eminent domain proceeding, it is proper for the trial court to admit proof of all factors which an owner could reasonably urge upon a prospective purchaser which could tend to favorably influence the

person. *Fulton County v. Cox,* 99 Ga. App. 743, 747 (109 SE2d 849); 4 Nichols on Eminent Domain 12-95, § 12.2 [3], 27 AmJur2d 68, Eminent Domain, § 279. Privacy of specific realty can be such a factor. Admission of evidence rests largely within the sound discretion of the trial judge and the Georgia rule favors admission of any relevant evidence, regardless of how slight its probative value. *Life Ins. Co. of Ga. v. Dodgen,* 148 Ga. App. 725, 729 (252 SE2d 629); *Harris v. McClain,* 152 Ga. App. 447, 448 (263 SE2d 233). Hence, we find no abuse of discretion in admission of evidence of "privacy" in the condemned property, and of the diminution of that privacy caused by the easement, which could result in diminution of the value of the remainder — an element to be considered in determining whether there were consequential damages to the remainder.

3. The trial court denied condemnor's requested charge dealing with the measure of damages, and the condemnor objected to that portion of the charge given by the trial court dealing with computation of the measure of damages. We agree that the charge given by the court was error.

The court charged that "the just and adequate compensation the defendant is entitled to under the Constitution has been otherwise defined as the actual value of his loss or their loss. Ordinarily, actual value is the same thing as fair market value ... [and after defining fair market value, added] while fair market value is ordinarily the same as actual value, there may be circumstances in which it may not be the same ... It is up to you to determine whether such circumstances exist. *You are entitled to consider the peculiar value of the property to the owner* under certain conditions. But before you consider the peculiar value of the property to the owner you must find that the relationship of the owner thereto is peculiar; that its advantages to him or her or them are more or less exclusive, and would not be likely to apply to another owner." (Emphasis supplied.)

Our Constitution, Art. I, Sec. III, Par. I (Code Ann. § 2-301), provides in pertinent part, that "[p]rivate property shall not be taken, or damaged, for public purposes, without *just and adequate compensation* being first paid." (Emphasis supplied.) However, the Code, in implementation of this Constitutional provision (Code Ann. § 36-504 (Code § 36-504)), states that assessors shall *"assess the value"* of the property taken and the consequential damages, and: "Provided, further, that nothing in this section shall be so construed as to deprive the owner of the *actual value* of his property so taken or used." (Emphasis supplied.) Hence, in an eminent domain proceeding, the "just and adequate compensation" due a condemnee

is "the value" of the land taken, plus any consequential damages to the remainder if there is a partial taking, which may not be less than "the actual value" of the property taken or damaged. The word "damaged," has a broader meaning than the word "taken," and is designed to impose liability on a condemnor for consequential injuries to property which would not otherwise exist. See generally 29A CJS 456, Eminent Domain, § 111; 26 AmJur2d 829, Eminent Domain, § 160. "[T]o warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property, in excess of that sustained by the public generally." *Pause v. City of Atlanta,* 98 Ga. 92, 99 (26 SE 489).

"Value" is a generic word, and under different circumstances has been used to represent "actual value," "market value," "reasonable value," "cash value," "special value," and "peculiar value," when assessing damages. *State Hwy. Bd. v. Bridges,* 60 Ga. App. 240, 243 (3 SE2d 907); overruled in part on other grounds, 248 Ga. 372, 376 (283 SE2d 466). " 'Generally speaking, the measure of damages is the market value of the property to be taken, and when this would give just and adequate compensation to the owner this rule should be applied.' [Cit.] But when the evidence shows that the property has some unique and special value to the condemnee other than, or over and above, fair market value, and that fair market value will not afford just and adequate compensation to the condemnee, other criteria than fair market value may be considered in arriving at just and adequate compensation." *State Hwy. Dept. v. Thomas,* 106 Ga. App. 849, 853 (128 SE2d 520). In *Thomas,* supra, the issue was whether evidence was admissible to show the condemned land was to become a subdivision. This court held it was discretionary with the trial court as to whether the evidence showed a reasonable probability that the land was to be used for a subdivision and the court could admit or exclude such evidence of value for determination of damages by the jury.

The bench and bar of this state have commingled and confused the terms — "peculiar value" and "unique value." See *Housing Auth. of Atlanta v. Troncalli,* 111 Ga. App. 515, 518-519 (142 SE2d 93); *DOT v. Dent,* 142 Ga. App. 94 (3) (235 SE2d 610); DOT v. Vest, 160 Ga. App. 368, 369 (287 SE2d 85); *Housing Auth. of Atlanta v. Southern R. Co.,* 245 Ga. 229, 230 (1) (264 SE2d 174); *DOT v. Dixie Bottle Shop,* 245 Ga. 314 (265 SE2d 10). Nichols distinguishes the two terms and restricts the word "unique" to property not of a type generally bought or sold in the open market, which is worth its cost to

its owner but could be unmarketable. 4 Nichols on Eminent Domain 12-533-534, § 12.32 [1]. Examples are a church, college building, a clubhouse, or even such property as a golf club, or school. "In other words unique property is simply property which must be valued by something other than the fair market value standard" because there is no general market for such property. *Housing Auth. of Atlanta v. Southern R. Co.,* 245 Ga. 229, 230, supra.

Nichols restricts the term "peculiar value" to property having an "existing use" which the owner of the property is devoting it at the time it is taken by eminent domain when such land "possesses a peculiar value for such use . . ." 4 Nichols on Eminent Domain 12-302, § 12.3141. "[I]t must appear, not that the property is peculiar, but that the relationship of the owner thereto is peculiar — its advantages to him more or less exclusive — that is, that it is property having value peculiar to the owner only, and without possible like value to others who might acquire it." Id. at 12-303; *City of Gainesville v. Chambers,* 118 Ga. App. 25, 27 (162 SE2d 460). *DOT v. Eastern Oil Co.,* 149 Ga. App. 504 (1) (254 SE2d 730). When you have either type of property — "unique," or "peculiar," then the "non-fair market value method" is used for determining just and adequate compensation. Cf. *Housing Auth. of Atlanta v. Southern R. Co.,* 245 Ga. 229, 231, supra. However, "[a]s long as there is an ascertainable market value, no consideration need be given to value peculiar to the owner. Sentimental value must be ignored. Condemnation proceedings are *in rem* and just compensation must be based upon the value of the rights taken, without regard to the personality of the owner or his personal relationship to the property taken. The value of the property for his personal purposes must be disregarded." 4 Nichols on Eminent Domain 12-110, § 12.22 [2]; accord: *Bowers v. Fulton County,* 221 Ga. 731, 739 (146 SE2d 884); *State Hwy. Dept. v. Noble,* 114 Ga. App. 3 (2) (150 SE2d 174); *State Hwy. Dept. v. Augusta &c. Methodist Church,* 115 Ga. App. 162 (1) (154 SE2d 29); *Gaines v. City of Gainesville,* 115 Ga. App. 220, 221 (3) (154 SE2d 280); *City of Atlanta v. Williams,* 119 Ga. App. 330 (2) (167 SE2d 216); *State Hwy. Dept. v. Clark,* 123 Ga. App. 627 (1) (181 SE2d 881).

The issue of whether land taken or damaged in an eminent domain proceeding is unique or peculiar is a jury question. Cf. *Housing Auth. of Atlanta v. Southern R. Co.,* 245 Ga. 229, 231, supra. But, a charge to the jury on this subject which is correct as an abstract principle of law, if not supported by the evidence, may tend to confuse or mislead the jury and is error which is presumptively harmful to the losing party. *Seibers v. Morris,* 226 Ga. 813, 816-817 (177 SE2d 705); *American Motorist Ins. Co. v. Sutton,* 148 Ga. App. 872 (9) (253 SE2d 256); *Ingram v. Jackson,* 153 Ga. App. 201, 202 (265

SE2d 29).

We must now determine whether the evidence supported the giving of the charge — permitting damages to be computed on the basis of the condemned property having a value "peculiar" to the owner — as opposed to the general method of computing damages based on fair market value. The only evidence as to uniqueness or peculiarity of this property was its "riverfront" location and its "privacy." We do not find the "riverfront" nature of realty to support a finding of either "uniqueness" or a value "peculiar" to the owner. It is not unique in that it is one of a kind or so infrequently bought or sold as not to have a "market value." A "riverfront" location, the same as an "oceanfront" location of realty might enhance the value, but it does not remove it from that general category of realty having a market value which is ascertainable. "Riverfront" land does not possess a value or use which is "peculiar" to the present owner since it would have a similar value to all successors in title to the same realty. See 4 Nichols on Eminent Domain 12-302, 12-304, § 12.3141.

Is the right of privacy sufficient to make condemned realty unique or does it have a value "peculiar" to the owner? We find that it does not. The right of privacy, to a greater or lesser extent, is inherent in ownership of all realty. Lesser in urban areas — greater in rural areas — but dependent, to an extent, upon additional measures taken by the occupant such as privacy fences, walls, guard dogs, etc. The concept of privacy is not unique to a property owner in that it is not a one of a kind factor that exists only in this particular parcel. As stated earlier, privacy — to a greater or lesser extent is inherent in the ownership of all property and is not unique just to this parcel. Neither is it a factor with a current use value which is peculiar only to the present owner and would not pass to a successor in title. 4 Nichols on Eminent Domain 12-112, § 12.22 [2].

In summary, while evidence of "privacy" and "riverfront" location of realty are elements which are admissible in establishing "market value" of realty, and any decrease of "privacy" following completion of the easement through the property would be a factor to be assessed by a jury in determining if there was any diminution in the value of the property — hence, to be included in computing consequential damages to the remainder; neither "privacy" nor the "riverfront" location of the condemned property, as a matter of law, are sufficient to authorize a charge on, or a finding of, "unique," or an existing use value which is "peculiar" to the owner. Both "privacy" and "location" are elements generally included in any finding of market value, and as long as there is an ascertainable market value, no consideration can be given to uniqueness or value peculiar to an owner. 4 Nichols on Eminent Domain 12-110, § 12.22 [2].

Accordingly, as a matter of law, there being no evidence of uniqueness or existing use with value peculiar to the owner, it was error to give a charge permitting computation of damages on a basis other than market value. *State Hwy. Dept. v. Thomas,* 106 Ga. App. 849, 853-854, supra; *State Hwy. Dept. v. Martin,* 111 Ga. App. 428 (1) (2) (3) (142 SE2d 84); *City of Gainesville v. Chambers,* 118 Ga. App. 25 (2), supra; *City of Atlanta v. Williams,* 119 Ga. App. 330 (2), supra; *State Hwy. Dept. v. Clark,* 123 Ga. App. 627 (1), supra; *DOT v. Dent,* 142 Ga. App. 94 (3), supra.

4. We have examined the remaining enumerations of error and found them to be without merit, mooted by the above holding, or not likely to recur in the event of a new trial.

*Judgment reversed. Shulman, C. J., and Carley, J., concur.*

DECIDED JANUARY 12, 1983 —
REHEARINGS DENIED FEBRUARY 7, 1983 — 

*Wallace Miller, Jr.,* for appellant.
*F. Robert Haley, W. Carl Reynolds,* for appellees.