## 66052. DOWNSIDE RISK, INC. v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY.

POPE, Judge.

This is an inverse condemnation and nuisance action. In this case plaintiff Downside Risk, Inc., a former tenant of Underground Atlanta, sought damages against defendant MARTA arising out of the construction of its rapid rail system through Underground Atlanta.

Plaintiff owned and operated two restaurants in Underground Atlanta, W. D. Crowley's Steak and Lobster House and the Bucket Shop. W. D. Crowley's and the Bucket Shop were both located near the southwest intersection of Old Alabama Street and Old Pryor Street, fronting on the south side of Old Alabama Street. In 1971 a public referendum was passed allowing MARTA to acquire 15 to 20 feet of the rear of the buildings in Underground Atlanta located on the north side of Old Alabama Street. However, in September 1975 it was determined that it would be necessary for MARTA to acquire all and not just the rear of the buildings located on the north side of Old Alabama Street. MARTA acquired title to this property by negotiation and contract between April 1975 and April 1976. The first business to move out because of the MARTA acquisitions did so in June 1975. In October 1976 the demolition of the buildings began and continued until December of 1976. MARTA did, however, retain some of the building storefronts or facades. Both restoration of the facades and construction of the rail line in this area were completed by July 1977. Plaintiff alleged that due to MARTA's acquisition of the property on the north side of Old Alabama Street, the eventual closing of the businesses on that property and the demolition and construction that occurred on that property, its restaurants suffered a decline in business and were forced to close. Plaintiff alleged two theories of recovery: (1) inverse condemnation whereby plaintiff alleged that due to MARTA's acquisition of the property on the north side of Old Alabama Street its property across the street on the south side was affected in a manner which amounted to a compensable

damaging according to Article I, Section III, Paragraph I of the Georgia Constitution (Code Ann. § 2-301) and (2) alternatively that MARTA maintained a present and continuing nuisance thereby causing damage to its property.

After discovery in the superior court, MARTA moved for and was granted summary judgment on all counts. However, this court reversed that grant in *Downside Risk, Inc. v. MARTA,* 156 Ga. App. 209 (274 SE2d 653) (1980). The case then proceeded to trial and the jury returned a verdict for MARTA. Plaintiff now brings this appeal alleging eight enumerations of error.

1. Plaintiff's first enumeration of error is that the evidence was not sufficient to support the jury's verdict that there was no inverse condemnation of its business. Article I, Section III, Paragraph I of the Georgia Constitution (Code Ann. § 2-301) provides: "[P]rivate property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." According to the Georgia Supreme Court, " '[t]he term "property" is a very comprehensive one, and is used not only to signify things real and personal owned, but to designate the right of ownership and that which is subject to be owned and enjoyed.' [Cit.] 'The term (property) comprehends not only the thing possessed, but also, in strict legal parlance, means the rights of the owner in relation to land or a thing; the right of a person to possess, use, enjoy, and dispose of it, and the corresponding right to exclude others from the use.' " *Woodside v. City of Atlanta,* 214 Ga. 75, 83 (103 SE2d 108) (1958).

After reviewing the record this court finds that sufficient evidence was presented at trial to show that MARTA's activities were not responsible for the demise of plaintiff's two restaurants. It appears that numerous other factors were largely responsible for this downfall, and in fact several of these factors began to affect business in Underground Atlanta in general before the advent of MARTA.

During early 1974 the nation entered into an economic recession that severely affected the entire entertainment and tourist industry. Also during 1974 Underground Atlanta developed a reputation for being unsafe and this kept many people away. In 1972 the drinking age was lowered to 18 so that the clientele in Underground Atlanta became younger, which was somewhat incompatible with its original orientation as an entertainment center for an older clientele. In addition, Underground Atlanta was having difficulty keeping its streets clean and keeping out undesirables. The city also repealed its coat-and-tie dress code and there was increasing competition from other restaurants and bars in both downtown and the suburbs.

Sales at W. D. Crowley's Steak and Lobster House peaked in August 1974 and thereafter steadily declined except for a few slight

increases until it closed in December of 1976. The Bucket Shop sales peaked in December of 1973 and then began a steady decline with the exception of a few slight increases until it closed in 1979. The peak sales month for the two restaurants combined was April 1974. However, MARTA did not even begin acquiring property in Underground Atlanta until April 1975 and the first business to actually close and move out because of the MARTA acquisitions did not do so until June 1975. Thus, the sales in plaintiff's restaurants began to decline before MARTA ever acquired any property in Underground Atlanta, and as appellate courts have often held, "if there be any evidence to support the [jury] verdict, however slight it may be, the power to interfere with such finding is lacking." *Lockwood v. Daniel,* 194 Ga. 544, 548 (22 SE2d 85) (1942); *Parsons, Brinckerhoff, Quade & Douglas, Inc. v. Johnson,* 161 Ga. App. 634 (2) (288 SE2d 320) (1982). Thus, plaintiff's first enumeration of error is without merit.

2. Plaintiff secondly contends that the trial court committed reversible error in excluding from evidence the "Underground Atlanta Historical District" impact study prepared by MARTA. Plaintiff sought to have the impact study admitted for the purpose of impeaching the defendant's witness, John R. Brach. In this study MARTA recognized that running its rapid rail system through Underground Atlanta would have an adverse impact thereon. Brach identified the study and then acknowledged several times during his testimony that MARTA recognized that its rapid rail line would have an impact on Underground Atlanta. According to OCGA § 24-9-83 (formerly Code Ann. § 38-1803), a witness may be impeached by contradictory statements previously made by him. If the contradictory statements are in writing and in existence, they shall be shown to him or read in his hearing. A witness may not be impeached by proof of contradictory statements without first laying a proper foundation as required by OCGA § 24-9-83 (Code Ann. § 38-1803). See *Morris v. State,* 228 Ga. 39 (13) (184 SE2d 82) (1971). In this case no proper foundation was laid for proof of a contradictory statement. In addition, Brach never denied that MARTA's rapid rail line would have an effect on Underground Atlanta; thus, there was in actuality no testimony to impeach. Under these circumstances the trial court properly excluded the impact study.

3. Plaintiff's third enumeration of error alleges that the trial court committed reversible error in charging the jury as to the definition of "uniqueness." In condemnation proceedings in order to recover for the destruction of a business the property must be unique. *Hinson v. D. O. T.,* 135 Ga. App. 258, 259 (217 SE2d 606) (1975). The trial court charged the jury with the following definition of

uniqueness: "Property is unique when it is not of a type generally bought or sold on the open market." This definition has been recognized and approved by both the Georgia Supreme Court and the Georgia Court of Appeals. *D. O. T. v. Dixie Highway Bottle Shop,* 245 Ga. 314, 315 (265 SE2d 10) (1980); *Housing Authority v. Southern R. Co.,* 245 Ga. 229, 230 (264 SE2d 174) (1980); *Heilman v. D. O. T.,* 162 Ga. App. 547, 548 (290 SE2d 189) (1982). See also *Macon-Bibb County Water &c. Auth. v. Reynolds,* 165 Ga. App. 348 (3) (299 SE2d 594) (1983).

In addition, on re-charge the trial court charged the jury with plaintiff's requested definition which was as follows: "I further charge you that property is unique where there is some special or peculiar relationship between the location of property and the business operated on the property." See *Housing Authority v. Troncalli,* 111 Ga. App. 515, 518 (142 SE2d 93) (1965). By doing this the trial court broadened the definition of "uniqueness." The definitions given were simple and clear and would not have misled or confused the jury. Thus, this third enumeration of error is without merit.

4. Plaintiff next contends that the trial court committed reversible error in charging the jury that "unlawful" interference with its right to enjoy the use of its property was a requisite to recovery under an inverse condemnation theory. Plaintiff had requested that the trial court charge the jury that "substantial" interference was required. However, according to the trial transcript, the trial court charged the jury that "substantial" interference was required, just as plaintiff requested. Plaintiff contends that based on its counsel's trial notes the trial court did not use the word "substantial" but instead used "unlawful." According to OCGA § 5-6-41 (f) (formerly Code Ann. § 6-805 (f)), "[w]here any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth. If anything material to either party is omitted from the record on appeal or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected and, if necessary, that a supplemental record shall be certified and transmitted by the clerk of the trial court." Since the record discloses no effort by plaintiff to have the transcript corrected as provided by statute, this court will assume that the transcript is correct and that the jury was charged that "substantial," rather than

"unlawful," interference was required, just as plaintiff requested. Therefore, plaintiff's fourth enumeration of error has no merit.

5. Plaintiff's fifth enumeration of error alleges that the trial court refused to give the following charge: "Ladies and gentlemen of the jury, I further charge you that the constitutional provision providing that compensation be paid for the damaging of property by a public improvement is all inclusive, and covers the damaging of private property whether brought about by proper and diligent construction or negligent and improper construction. In other words, in order to recover, Downside Risk need not prove that defendant's construction was negligent or improper." The trial court refused to give this charge on the ground that the last sentence was confusing in light of the fact that plaintiff's alternative theory of recovery was nuisance, and negligence is an element of nuisance.

This court has held: "It is never error for the court to refuse a request to charge where a part of the requested charge is so worded that it would be confusing to the jury." *Keese v. Mize,* 27 Ga. App. 666 (4) (110 SE 417) (1921). In addition, this court has held: "It is now well settled that, simply because a request to charge [cit.] is apt, correct and pertinent, it is not necessarily error to fail to charge it, but the test is whether the court substantially covered the principles embodied therein [cits.] or whether it was 'sufficiently or substantially covered by the general charge' [cit.]." *Seaboard C. L. R. Co. v. Thomas,* 125 Ga. App. 716, 718 (188 SE2d 891) (1972). In the case at bar, the charge as a whole encompassed all the necessary principles of law. Consequently, this enumeration is without merit.

6. Plaintiff also contends that the trial court erred in failing to charge the jury that "should you find that Downside Risk, Inc.'s business in Underground Atlanta was destroyed as a result of defendant's destruction and construction project, Downside Risk, Inc. would not be barred from recovery merely because some or all of the conditions leading to the damages to the business were temporary in nature." Plaintiff argues that its "evidence was that the demolition and construction process itself was the final straw in the destruction of its business — it was simply impossible to carry on a business in the negative atmosphere created by the devastation directly across the street." However, the evidence did not show any "temporary total loss of access" (see *DeKalb County v. Cowan,* 151 Ga. App. 753 (1) (261 SE2d 478) (1979)), nor was there any evidence of a permanent loss of access to the entire frontage of plaintiff's property (see *D. O. T. v. Delta Machine Products Co.,* 157 Ga. App. 423 (1) (278 SE2d 73) (1981)). Rather, the evidence disclosed only some temporary inconvenience and circuity of access normally associated with construction projects.

The trial court charged the jury that plaintiff was not entitled to recover for temporary inconveniences such as smoke, dust, debris, fumes, noise, etc. during construction of the MARTA rapid rail system unless they were a permanent or continuous incident of the rapid rail system after the construction had been completed. Based on the issues raised by the pleadings and proof in this case, the charge given was a correct and pertinent statement of the law. See *MARTA v. Datry,* 235 Ga. 568, 580 (220 SE2d 905) (1975); *Downside Risk, Inc. v. MARTA,* supra at (1).

"Requests to charge standing alone must be correct as an abstract principle of law, even perfect, and precisely adjusted to some principle involved in the case. If any portion of the request is inapt or incorrect, denial of the request is proper. [Cit.] A fortiori, a request for a charge based upon an improper legal standard is properly refused. [Cit.]" *McMullen v. Vaughan,* 138 Ga. App. 718, 721 (227 SE2d 440) (1976), and cases cited; *SCM Corp. v. Thermo Structural Products,* 153 Ga. App. 372 (7A) (265 SE2d 598) (1980). Therefore, plaintiff's sixth enumeration of error is without merit.

7. Plaintiff's seventh enumeration of error alleges that the trial court erred in charging the jury that "if plaintiff['s] property has not been taken or physically damaged by MARTA, the plaintiff is not entitled to recover for elements of inconvenience which flow naturally and of necessity from the construction of the rapid transit line." This is a correct statement of the law. See *Downside Risk, Inc. v. MARTA,* supra at (3), and cases cited; see also *Richmond County v. Williams,* 109 Ga. App. 670 (137 SE2d 343) (1964).

Nevertheless, plaintiff argues that this charge, when read in conjunction with the following charge, was confusing and misleading to the jury: "[A]ctual physical intrusion into property by a public authority is not required in order for just compensation to be due from a public authority that damages private property.... Rather, if a property owner proves substantial interference with his right to enjoy the use of his property, he may recover." This, too, is a substantially correct statement of the law. See *Duffield v. DeKalb County,* 242 Ga. 432, 434 (249 SE2d 235) (1978).

Viewing the charge in its entirety, we find it neither confusing nor misleading. Plaintiff's complaint was cast in six counts, containing numerous allegations of damage for both permanent and temporary effects of the MARTA construction under an inverse condemnation theory, as well as allegations under a nuisance theory. It was impossible for the trial court to give one charge that applied to all the various theories of damage. "In a case of this character, which was so vigorously [prosecuted and] defended, it is almost impossible for the judge to give a perfect charge on every phase presented. It

therefore becomes the duty of this court to review the charge as a whole in the light of the entire record to determine whether or not the charge was substantially correct." *Chambers v. State,* 68 Ga. App. 338, 341 (23 SE2d 545) (1942). "If the charge as a whole is not misleading, there is no error." *State Hwy. Dept. v. Davis,* 129 Ga. App. 142, 144 (199 SE2d 275) (1973). We have carefully reviewed the entire charge in light of the objection herein made by plaintiff, and we conclude that this enumeration of error has no merit.

8. Plaintiff's final enumeration cites as error the trial court's charging the jury regarding access to abutting public streets. It is conceded that the subject charges were correct statements of law, but plaintiff contends that these charges were not properly adjusted to the facts. We disagree. As noted in Division 7, supra, the issues in this case were many and varied. There was at least some evidence of record to warrant the charges here complained of, in addition to other charges on access given by the trial court pursuant to plaintiff's requests. See generally *Brown v. Matthews,* 79 Ga. 1 (4 SE 13) (1887). Thus, because the subject charges were correct statements of law properly adjusted to the facts, this enumeration of error has no merit.

*Judgment affirmed. Quillian, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 6, 1983 —
REHEARING DENIED SEPTEMBER 29, 1983 — 

*Jeffrey W. Kelley, Frank Love, Jr.,* for appellant.
*Charles N. Pursley, Jr., Robert A. Boas,* for appellee.