189 Ga. App. 34 (1988)
375 S.E.2d 42
DEPARTMENT OF TRANSPORTATION
v.
A. R. C. SECURITY, INC.
76916.
Court of Appeals of Georgia.
Decided October 14, 1988.
Rehearing Denied October 26, 1988.
Charles C. Pritchard, Michael J. Bowers, Attorney General, Roland Matson, Senior Assistant Attorney General, for appellant.
Glenville Haldi, for appellees.
BEASLEY, Judge.
Condemnor Department of Transportation appeals the denial of its amended motion for new trial following judgment on a jury verdict. Compensation of $225,000 was awarded to condemnee A. R. C. Security, Inc., for .553 acres of land at the southwest corner of the intersection of Georgia Avenue and Pulliam Street abutting I-75/85 near the Atlanta Stadium.
1. Department of Transportation contends that the trial court erred in overruling its motion to strike the testimony of the condemnee's witness, Dr. Verner, and to instruct the jury to disregard it as speculative and conjectural and failing to conform to recognized methods of appraisal for the legal measure of damages. Department of Transportation further contends that the court erred in allowing evidence of value of the property supplied by Verner on two grounds: 1) Verner did not appraise the property but made only a land use evaluation; 2) Verner's testimony was based on a range of value by projecting "savings" in the amount of $45,000 to the condemnee, which was improper, speculative, and non-probative.
Verner, an associate professor of real estate and chairman of the department of real estate at Georgia State University, was hired by A. R. C. to do a highest and best use analysis of the property. Verner defined the highest and best use as that which would leave the most profit for the land or the highest value for the land after all of the other factors of production were appropriately rewarded. He concluded that the highest and best use of the property was as a headquarters office site for A. R. C., the principal business of which was providing various security services in the Atlanta area. This was the purpose for which A. R. C. bought the property in 1979.
Verner performed an arithmetic analysis to identify the highest and best use given certain information about the characteristics of the site and information about passing traffic and income levels in the neighborhood as provided by his colleagues, Drs. Rabianski and Carn. He also familiarized himself with the operation and needs of A. R. C. by visiting the company office and interviewing the company's owner. Verner visited the condemned site several times and drove through the neighborhood both alone and with Carn and Rabianski. He testified that the approaches that he used in forming his opinion were valid and appropriate methods of evaluating and appraising property *35 as generally recognized within the evaluation and appraisal industry.
Department of Transportation argues that the data supplied by Carn and Rabianski, while possibly shedding light on what the economic trends might be in the future, had no probative value as to the market value of the property on the date of taking, so that Verner's reliance on such "speculative application of economic theory information" in determining his conclusion as to the highest and best use rendered his own conclusions speculative, inadmissible and irrelevant.
"Generally, just and adequate compensation is the fair market value of the condemned property at the time of taking. [Cit.]" Canada West, Ltd. v. City of Atlanta, 169 Ga. App. 907, 909 (1) (315 SE2d 442) (1984). "However, market value is not always the fairest or most accurate method of measuring the loss to the condemnee. [Cits.]" Dixie Hwy. Bottle Shop v. Dept. of Transp., 150 Ga. App. 839, 840 (1) (258 SE2d 646) (1979), vacated 245 Ga. 314 (265 SE2d 10) (1980), on remand 154 Ga. App. 405 (268 SE2d 442) (1980). Property may have a "peculiar value which may be over and above its market value. [Cits.]" 150 Ga. App. 839 at 841 (4). When fair market value will not afford just and adequate compensation because the property is not of a type generally bought or sold in the open market, such property is "unique." Housing Auth. of Atlanta v. Southern R. Co., 245 Ga. 229, 230 (1) (264 SE2d 174) (1980). While replacement cost new less depreciation, income, and comparable sales are the three recognized techniques for determining market value, unique property is measured by a variety of methods other than the fair market method of valuation. Id. See also Dept. of Transp. v. Eastern Oil Co., 149 Ga. App. 504 (1) (254 SE2d 730) (1979).
There was testimony that the property was unique to A. R. C. in that it was located right next to the freeway which carried large volumes of traffic past it, allowing many people from both Atlanta and out of town to see a sign advertising A. R. C. Connected with this was the opportunity to build a fortress-like structure for the company office which would convey the image of security and in effect advertise the company's ability to deliver security and protection services. The property was in a neighborhood where it would qualify for industrial revenue bond financing, an advantage not existent in many other areas. In addition, the property was used for parking for stadium events. There was evidence that at the time A. R. C. bought the property it was virtually the only undeveloped site in the immediate area with a good view to and from the expressway. It was on a corner and was zoned for commercial use.
This constituted sufficient evidence of the property's uniqueness to submit the question to the jury. Dept. of Transp. v. White, 173 Ga. App. 68, 71 (4) (325 SE2d 397) (1984). Relevant, then, were factors about the property other than those traditionally constituting a fair *36 market determination, including the highest and best use analysis provided by Verner and consideration of a range of value. The data supplied by Carn and Rabianski and relied on in part by Verner was not speculative. It was based on personal observation and characteristics of the property at the time of taking. Moreover, there was evidence that the uses for the land considered by Verner were reasonably probable so as to have an effect on the value of the land at condemnation. See State Hwy. Dept. v. Thomas, 106 Ga. App. 849 (1) (128 SE2d 520) (1962).
"`It has long been the policy of the Georgia appellate courts to be liberal in allowing matters to be considered by the jury which might affect their collective mind in determining the just and adequate compensation to be paid the condemnee....'" Dept. of Transp. v. Brooks, 153 Ga. App. 386, 389 (2) (265 SE2d 610) (1980).
It was not error to refuse to strike Verner's testimony in its entirety.
2. Appellant claims that the court erred in allowing testimony of condemnee's witness Stripling about income to be earned from sign rental.
Stripling was a real estate appraiser who had experience in appraising sign and advertising values up and down I-75/85 in Atlanta. He was asked by condemnee's counsel to give his opinion as to what an owner would have to pay to duplicate in the immediate area the sign exposure of the condemned property at the time of the taking. Department of Transportation's counsel objected on two grounds: 1) that the question purported to use an off-premises sign rate to determine and establish the value and/or rate of an on-premises sign, which would constitute an inappropriate comparison of two different entities; 2) that at the time of acquisition by Department of Transportation there was no evidence of a sign of any type on the property.
The court overruled the objection. It concluded that the condemnee was entitled to present evidence of loss of an opportunity to put up a sign if it chose to, that it was an ingredient the jury could consider if it found it appropriate to do so under the evidence and instructions of law. Stripling then rendered his opinion that the condemnee would have to pay $4,000 a month or $48,000 a year to duplicate the advertising A. R. C. could have done on its own property for its own business.
Department of Transportation argues that although Stripling stated his testimony was based on his knowledge of sign values in the area, the foundation for his experience in evaluating such matters was vague and appeared to be based on his knowledge of off-premises bill-board signs and outdoor advertising along I-75 at locations other than the subject property.
Stripling testified in some detail and was not vague about his experience *37 in evaluating signage. Further, Stripling's testimony as a whole does not support the conclusion that his knowledge and evaluation were based solely on off-premises signage, i.e., signs advertising the business of another. In addition, it is not a valid objection that Stripling's knowledge was based on signs on other property because it is undisputed that at the time of taking there was no signage on A. R. C.'s property so an evaluation of actual signage on the subject property was not possible.
Department of Transportation further takes issue with Stripling's testimony on the bases that off-premises signage was not permitted on the condemned property and that the likelihood of a variance was practically nil. However, Stripling's testimony of value of the signage opportunity to A. R. C. was specifically as to on-premises advertising, i.e., A. R. C. advertising its own business.
There being evidence that there was a reasonable probability that the property could be used for the signage purposes testified to by Stripling, see Georgia Power Co. v. Cole, 141 Ga. App. 806 (1), 807 (2) (234 SE2d 382) (1977), it was not error to permit Stripling's testimony.
3. Department of Transportation also contends that the lower court erred in failing to grant its motion to strike the testimony of condemnee's witness Scott as speculative and without factual basis.
Scott, an independent real estate appraiser, determined that the fair market value of the property at its highest and best use on the date of taking was $365,000 for the main portion of the property, not including the value of one-half of an alley located at the rear. In this valuation, Scott considered the interim use of the property as a parking lot for stadium events.
Department of Transportation argues that as to the parking, Scott had not used the figures in his income stream which were reflected on the condemnee's financial records and that his testimony as to an income stream of $36,000 a year as income generated by the parking business at the stadium was contradictory to the income stream of $20,000 annually furnished by Verner. Thus, Department of Transportation concludes, the gross income stream of $36,000 used by Scott in appraising the property had no actual basis and was contradictory and speculative at best, rendering his appraisal inaccurate. Department of Transportation adds that Scott did not give evidence of any comparable sales to support his market approach, although he said he used them in rendering that portion of the appraisal.
Scott's valuation was computed on a market approach analysis. The parking revenue information was supplied to Scott by A. R. C.'s owner. Even assuming that Scott's estimate of income stream from the stadium parking was at variance with the condemnee's financial records or Verner's opinion, and even assuming the failure to provide *38 evidence of comparable sales, these factors would affect weight and credit rather than admissibility. OCGA § 24-9-80.
4. Appellant contends that the trial court erred in denying its motion for mistrial or in lieu thereof its request for an instruction to the jury to disregard a portion of the testimony of A. R. C.'s owner, Chouinard.
A. R. C.'s counsel questioned Chouinard about meetings with representatives from Department of Transportation. Counsel next asked him: "... Then I believe you said you had some other meetings. When do you recall the other meetings with the State Highway Department?" Chouinard responded, "A lady from the State Highway Department walked into my office one day in the beginning of 1983 and handed me a check for $50,000 and says we are taking your property."
Department of Transportation objected that the testimony as a reporting of pretrial negotiation or compromise prior to acquisition was highly prejudicial and irremediable, but this mischaracterizes the testimony. It merely described the contact between condemnee and condemnor in which the latter announced the price it had determined to pay. This is not a situation where an unaccepted offer to purchase was being used to prove value. Compare DeKalb County v. Noble, 122 Ga. App. 373 (177 SE2d 117) (1970); State Hwy. Dept. v. Hilliard, 114 Ga. App. 328 (151 SE2d 491) (1966).
5. Appellant further contends that the court erred in not giving its requests to charge regarding the inadmissibility of negotiations and settlement proposals in condemnation proceedings.
Inasmuch as there was no prejudicial statement of negotiation or estimate by the condemnor to show value of the property, see Division 4, refusing the charge was not error.
6. Department of Transportation contends that the trial court erred in charging the jury regarding the loss of business or profits when there was insufficient evidence to substantiate the actual loss of profits or that a business was actually conducted by condemnee on the subject property requiring compensation separate from the intrinsic value of the land. It posits that the entire parking operation was conducted by one Ennis, not condemnee, who paid the corporation a portion of what he took in as a result of the use of the property for parking during stadium events.
Ennis worked for Chouinard since 1972 and worked for A. R. C. managing stadium event parking. Out of the cash revenue from the parking, Ennis paid himself and his workers and gave the rest to Chouinard via a bookkeeper/secretary. The fact that Chouinard did not take a more direct role in the parking operation does not alter the character of the profit generated by the property as revenue for A. R. C.
*39 While it is true that there was some variation in the evidence of revenue from the parking operation as between that given by Ennis and reflected by the records kept by Ennis' wife and that testified to by other of the condemnee's witnesses, this discrepancy does not render it improper to submit the issues of lost business or profits to the jury. The sufficient admissible evidence of business loss, not remote or speculative, coupled with the evidence of the property's uniqueness, see Division 1, authorized the charge on business losses. See Dept. of Transp. v. 2.734 Acres of Land, 168 Ga. App. 541, 542 (1) (309 SE2d 816) (1983).
Judgment affirmed. Birdsong, C. J., and Banke, P. J., concur.