A92A1458. RAIFORD et al. v. DEPARTMENT OF
TRANSPORTATION et al.
(424 SE2d 789)

BEASLEY, Judge.
The DOT petitioned to acquire by condemnation fee simple title to a 1.024-acre tract needed for a right-of-way for a State-aid road.

OCGA §§ 32-3-4 through 32-3-19. Defendants were Charles Walker (owner), Bankers First (senior security deed holder), First Union (junior security deed holder), and Wayne Raiford (lessee). The latter operated a self-service laundromat on the property. He and Georgilina Enterprises, a wholly-owned corporation to which he transferred the assets of this business, appeal from a judgment on a jury verdict awarding them no damages for business losses on the ground that the property is not unique. They also complain of a ruling of the superior court that, under a subordination clause in the lease between Walker and Raiford, the security deeds have priority to the proceeds of the condemnation award.

Walker leased the property to Raiford beginning January 1, 1981, for five years, with options to extend the lease for two successive five-year periods.

Paragraph 20 of the recorded lease, entitled SUBORDINATION, provided: "Lessee hereby agrees that his leasehold interest hereunder is subordinate to any deed to secure debt now on, or hereafter to be placed on, the premises leased hereunder; provided, as a condition precedent to future subordination, each deed to secure debt shall expressly covenant or each deed to secure debt shall expressly provide that so long as the Lessee is not in default under said lease agreement, the Lessee's quiet possession of the premises leased shall remain undisturbed, on the terms and conditions stated herein, whether or not the deed to secure debt is in default and notwithstanding any foreclosure or other action brought by the holder of the deed to secure debt in connection therewith. This subordination agreement shall be self-operative and no further instrument or certificate of subordination shall be required from Lessee."

In July 1981, Walker borrowed $120,000 from Bankers First. In May 1984, he borrowed $61,136.14 from First Union. Both loans were secured by this property.

The DOT filed this condemnation action in February 1988. It initially deposited $120,000 into the court registry as just and adequate compensation. Walker so moved for distribution of these funds and averred that the claims of the security deed holders have priority over Raiford's claims under the subordination clause in the lease. Accordingly, Walker sought an order directing the clerk to pay the funds to Bankers First in satisfaction of that loan, and the remainder to First Union.

Raiford filed an affidavit in opposition to Walker's motion, on the ground that there were no provisions in the security deeds held by the banks satisfying the condition precedent stated in the subordination clause of his lease. Raiford averred that he had made substantial improvements which cost over $57,000; the bank loans are based in part on value added to the leased premises through these improvements;

Raiford is not in default under the lease; and the value of his lease-hold estate is $90,000. First Union subsequently recorded a "modification" of the security deed incorporating the language specified in the subordination clause of the lease.

On May 18, the superior court decreed that Bankers First's claim has first priority and First Union's claim has second priority and ordered disbursements to them, exhausting the fund. Raiford appealed. See *Raiford v. Dept. of Transp.*, Case No. A89A0212. This Court dismissed Raiford's appeal of the May 18 order on the ground that it was not a final judgment because the issue of just and adequate compensation had not been decided, and Raiford had not obtained a certificate for interlocutory review.

While that case was pending here, Walker filed another motion for distribution of funds, stating that the DOT had paid the additional sum of $53,690 into the court registry as the balance of just compensation for the property, pursuant to a settlement agreement to the effect that $173,690 constituted just and adequate compensation for the property. Raiford had not agreed that the total just compensation for the property was the amount paid into the court registry. Walker obtained an order directing the clerk to pay the additional funds on deposit to First Union to apply to Walker's indebtedness to it.

Before the jury trial on the issue of the amount of just compensation for the leasehold, the court granted a motion in limine by Walker to prohibit Raiford from making reference to, or attempting to prove, that the value of his leasehold interest was $90,000, because the banks had priority to the first $173,690 and any claim by Raiford below that amount was irrelevant and immaterial. A trial was held on whether Raiford could recover business losses on the ground that the property taken was unique, and, if so, the amount of his losses.

Walker testified that the building on the property was a typical concrete block building with a steel roof, located at 1507 Fifteenth Street in Augusta, Georgia. He leased part of the building to Raiford for a laundromat. A convenience store being operated in the other part of the building went out of business, and Walker relet this area for the operation of a cafe with pool tables. Walker testified that Raiford had told him he was not going to renew the lease after the second option expired because of the resulting traffic and noise.

Hollingsworth and Strickland, professional real estate appraisers employed by the DOT, testified as to the fair market value of the building but not the laundromat business, utilizing traditional tests as to the sales price of comparable properties and the rental value of the building. Hollingsworth valued the portion of the building in which the laundromat was located at $68,620. Strickland valued it at $40,500. They also testified that comparable buildings could be rented

in the Augusta area.

Raiford testified, and sought to show, that this property constituted a unique location for a self-service laundromat, in that Fifteenth Street was a heavily-traveled major artery; the laundromat was near a large apartment complex and across the street from a large public housing development whose residents were without washers and dryers; there was no other comparable location in the Augusta area.

The trial court charged the jury that there are three criteria for determining if property is unique: if it must be duplicated for the business to survive and there is no substantially comparable property in the area; or, it is of a design not generally bought and sold on the open market; or, it has such particular advantages of location for the use to which it is being put. It also charged that only one of these criteria need to be satisfied in order to authorize a recovery for business losses; that "existing use of a piece of property peculiar to the condemnee does not make the property unique"; and that if the property is not unique the condemnee is not entitled to any compensation for business losses.

The verdict was "in favor of the condemnor in the amount of (zero) $0.00 dollars."

1. It was error to give the security deeds priority.

Under the general principle contained in OCGA § 44-14-323 that the first in time is the first in rank, the rights of a lessee are superior to those of a subsequent lienholder. *Lunsford v. Income Properties*, 254 Ga. 55, 56 (1) (325 SE2d 590) (1985). Consequently, foreclosure of the security deed and sale of the property pursuant to a power of sale do not divest the lessee of his or her leasehold estate where the lease antedates the security deed; otherwise, the lessee becomes a tenant at sufferance. *Wright v. Home Beneficial Life Ins. Co.*, 155 Ga. App. 241, 242 (1) (270 SE2d 400) (1980) and cits. However, where there is a clause in the lease making the rights of the lessee "subject to" a subsequent security deed, the foreclosed security deed has priority. Id. at 242. Secondary authorities support the view that such a clause also gives a lienholder priority to condemnation proceeds to the extent that the security has been impaired by the condemnation, although we find no cases specifically addressing the question. 2 Nichols on Eminent Domain, § 5.18 [1] [a], p. 5-253 (1990), citing Restatement of the Law of Property 2d, Landlord & Tenant, § 8.2, comment j, pp. 274-275 (1977). See generally *Dept. of Transp. v. McLaughlin*, 163 Ga. App. 1 (1) (292 SE2d 435) (1982).

The first clause of paragraph 20 states that the "[l]essee hereby agrees that his leasehold interest is subordinate to any deed to secure debt now, or hereafter to be placed on, the premises leased hereunder." The parties seem to be in agreement that in drafting paragraph

the lessor and lessee were contemplating priorities in the event of foreclosure and not condemnation. Compare *Simmerman v. Dept. of Transp.*, 167 Ga. App. 383, 384 (1) (307 SE2d 4) (1983); *Henson v. Dept. of Transp.*, 160 Ga. App. 521, 522 (1) (287 SE2d 299) (1981). However, the subordination agreed to is general and would operate to establish priorities between the lender and the lessee regardless of what event caused lessee's ouster. The subordination was not limited to an event of foreclosure.

Nevertheless, paragraph 20 adds a proviso: "as a condition precedent to future subordination, each deed to secure debt shall expressly covenant or each deed to secure debt shall expressly provide that so long as the Lessee is not in default under said lease agreement, the Lessee's quiet possession of the premises leased shall remain undisturbed. This subordination agreement shall be self-operative and no further instrument or certificate of subordination shall be required for lessee." Bankers First did not honor that condition precedent; First Union's attempt, after the institution of condemnation proceedings removed any realistic possibility of foreclosure, was untimely. Appellees argue that the lenders' nonperformance of this condition precedent is immaterial, because the lessee had the legal right to remain in possession in the event of foreclosure by reason of being prior in time to the security deeds.

This argument confuses contractual rights with statutory rights. The lessee's subordination of his interest to those of the security deed holders was conditioned upon the security deed holders' inclusion of a covenant of quiet possession in their deeds. The security deed holders did not fulfill this condition precedent. Consequently, whatever their statutory rights are, they do not have a contractual right to priority under the lease's subordination clause. It was error to grant the motion in limine.

2. It was error to charge the jury that the existing use of a piece of property peculiar to the condemnee does not make the property unique.

*Macon-Bibb County Water &c. Auth. v. Reynolds*, 165 Ga. App. 348 (299 SE2d 594) (1983), was the authority cited by the DOT in support of its request for charge. There, the court observed that the terms "peculiar value" and "unique value" had been "commingled and confused." Id. at 352. Citing from Nichols on Eminent Domain, *Reynolds* held that property has *unique* value to the owner, where it is "not of a type generally bought or sold in the open market, which is worth its cost to its owner but could be unmarketable. [Cit.] Examples are a church, college building, a clubhouse, or even such property as a golf club, or school." Id. at 353. *Reynolds* held that property has *peculiar value* to the owner where "the relationship of the owner thereto is peculiar — its advantages to him [are] more or less exclu-

sive — that is, that it is property having value peculiar to the owner only, and without possible like value to others who might acquire it." Id.

The term "uniqueness" is used in two contexts. One is where the property on which a business is situated constitutes a "unique" location, allowing business losses. The other is where property is "unique," so that its fair market value does not represent the condemnee's actual loss. See *Dept. of Transp. v. 2.734 Acres of Land*, 168 Ga. App. 541, 543 (3) (309 SE2d 816) (1983); *City of Gainesville v. Chambers*, 118 Ga. App. 25, 28 (2) (162 SE2d 460) (1968).

This case concerns the "uniqueness" of business property in the first context. *Reynolds* concerned the "uniqueness" of residential property in the second context. *Reynolds* held that the privacy of residential property, and the fact that it has a riverfront location, are factors to be considered in determining its fair market value, but they do not make it unique. "Neither is [privacy] a factor with a current use value which is peculiar only to the present owner and would not pass to a successor in title. [Cit.]" Id. at 354. Whether a piece of property is "unique" for business purposes depends upon the characteristics and location of the property in conjunction with the use to which it is being put. *Theo v. Dept. of Transp.*, 160 Ga. App. 518, 521 (8) (287 SE2d 333) (1981).

*Reynolds* does not support the trial court's charge that the existing use of a piece of property peculiar to the condemnee does not make the property unique. It was erroneous because the determination that there is an existing use of property peculiar to the condemnee is a touchstone for ascertaining whether the property is unique for business purposes.

3. It was not error to deny Raiford's motion for new trial on the general grounds. "The issue of whether land taken or damaged in an eminent domain proceeding is unique or peculiar is a jury question. [Cit.]" *Reynolds*, supra at 353. "[O]nly slight evidence is necessary to authorize a jury charge on the uniqueness of a business and the subsequent recovery of its losses. . . ." *2.734 Acres*, supra at 542. There was sufficient evidence in this case to authorize a jury to find that the condemned property constituted a "unique" location for a self-service laundromat in the Augusta area. See *Kessler v. Dept. of Transp.*, 142 Ga. App. 170 (235 SE2d 636) (1977); but compare *Almond v. MARTA*, 161 Ga. App. 363, 365 (1) (288 SE2d 129) (1982). The evidence did not demand such a finding.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

*Judgment reversed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED OCTOBER 8, 1992 —
RECONSIDERATION DENIED NOVEMBER 2, 1992

*Jay M. Sawilowsky*, for appellants.

*Michael J. Bowers, Attorney General, Harry B. James III, Fulcher, Hagler, Reed, Hanks & Harper, Robert C. Hagler, Nixon, Yow, Waller & Capers, Ziva P. Bruckner, O. Palmour Hollis*, for appellees.