70344. CONCRETE CONSTRUCTION COMPANY
v. CITY OF ATLANTA.
70345. ATLANTA GAS LIGHT COMPANY
v. CITY OF ATLANTA.
(339 SE2d 266)

SOGNIER, Judge.

The City of Atlanta brought suit against Atlanta Gas Light Company (AGL), Concrete Construction Company (CCC) and Georgia Power Company for damages arising from a gas explosion on January 8, 1973, at the City's facility at Northside Pumping Station. A jury trial was held and a verdict was returned in favor of Georgia Power, but against AGL in the amount of $300,358.59 compensatory damages and $901,075.79 punitive damages and against CCC in the amount of $128,725.71 compensatory damages and $386,173.31 punitive dam-

ages. The appeals of AGL and CCC are consolidated in this opinion.

The facts of this case, which are basically undisputed, have been set forth in detail in *Atlanta Gas Light Co. v. City of Atlanta*, 160 Ga. App. 396 (287 SE2d 229) (1981). For the purpose of these appeals, it suffices to outline that the explosion at appellee's facility occurred during a severe ice storm in which approximately 20,000 volts of electricity, discharged through an underground electrical conduit, came into contact with an underground gas line, installed by appellant AGL through its contractor, appellant CCC. The electric current arced from the conduit to the gas line, melting both pipes at the point of contact and thus allowing natural gas to flow into appellee's facility through the conduit where the gas accumulated and finally exploded.

1. AGL contends the trial court erred by denying its motion for directed verdict and overruling its motion for judgment notwithstanding the verdict and new trial on the issue of the relationship between AGL and CCC. AGL asserts that the evidence showed as a matter of law that the relationship between it and CCC was that of principal and independent contractor rather than principal and agent. AGL earlier moved for summary judgment on this issue and this court affirmed the trial court's denial of that motion in *Atlanta Gas Light*, supra at 399 (2), on the basis that as a matter of law the evidence did not support a finding that CCC was functioning as an independent contractor rather than as a servant of AGL. Id. We find that the evidence before the trial court in *Atlanta Gas Light*, supra, on motion for summary judgment was presented to the jury by appellee along with other evidence during the trial of this case. There being some evidence to uphold the jury's verdict, the trial court did not err by denying AGL's motions. See *Lindsey v. Heard Oil Co.*, 170 Ga. App. 572, 573 (1) (317 SE2d 597) (1984).

2. AGL and CCC contend the trial court erred by denying their motions for directed verdict, and AGL's motions for judgment notwithstanding the verdict and new trial, on the issue of negligence. "We will not speculate as to what evidence the jury chose to believe or disbelieve; on appeal this court is bound to construe the evidence with every inference and presumption being in favor of upholding the jury's verdict. [Cit.] Where the testimony of the plaintiff and the defendant is in conflict, the jury is the final arbiter [cit.], and after the verdict is approved by the trial judge, the evidence must be construed so as to uphold the verdict even where there are discrepancies. [Cits.]" *Ackerman &c. Realty Co. v. Coppedge*, 155 Ga. App. 903, 907-908 (3) (273 SE2d 645) (1980). Appellee introduced evidence that appellants had been made aware of the location of the electrical conduit before the gas line was installed, that appellants knew at least six inches of separation between pipes was necessary as a matter of good engineering practice but that nevertheless the gas line was installed

by CCC under AGL's supervision in hazardously close proximity to the electrical conduit. Thus, the jury had evidence before it from which it could have determined that appellants acted negligently in selecting the location of the gas line and in installing the gas line. " 'Although the evidence was conflicting, after verdict, the evidence is to be construed to uphold rather than to upset the verdict, when that can be reasonably done.' [Cit.] There was ample evidence of record to support the finding of the jury. Consequently, the trial court did not err in overruling appellant[s'] motions for directed verdict, judgment notwithstanding the verdict and new trial. [Cits.]" *Florida Tractor Corp. v. Miller*, 156 Ga. App. 494, 495-496 (1) (274 SE2d 836) (1980).

3. AGL and CCC contend the trial court erred by denying their motions for directed verdict and submitting to the jury the issue of punitive damages. Additional, or exemplary damages may be recovered under OCGA § 51-12-5 "[i]n a tort action in which there are aggravating circumstances, in either the act or the intention." "To authorize the imposition of punitive damages there must be evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences. The latter expression relates to an intentional disregard of the rights of another, knowingly or wilfully disregarding such rights." *Gilman Paper Co. v. James*, 235 Ga. 348, 351 (219 SE2d 447) (1975). There was evidence that appellants knew from earlier episodes of electrical arcing that it was not good practice to place an electrical conduit and a gas line in contact with one another and that electrical arcing posed danger to the public. Yet photographs taken after the explosion show the gas line and the electrical conduit were in contact with one another: testimony was elicited from both appellants' witnesses that due to the nature of the soil in which the gas line was laid, it was almost "guaranteed" no settlement of the pipe would occur after installation. Because there was evidence that the gas line was installed by CCC under AGL's supervision, there was ample support for a conclusion by the jury that appellants laid the gas line in contact with the electrical conduit, knew of that contact and of the potentially hazardous situation that contact posed, and yet did nothing to rectify the situation. The trial court did not err by denying appellants' motions for directed verdict and submitting the issue of punitive damages to the jury.

4. (a) AGL and CCC contend the trial court erred by failing to charge the jury on act of God and legal accident because those defenses were raised by the evidence of the severe ice storm of January 8, 1973. Act of God means "a casualty which is not only not due to human agency, but is one which is in no wise contributed to by human agency, and that an act which may be prevented by the exercise of ordinary care is not an act of God." *Central Ga. &c. Corp. v.*

*Heath*, 60 Ga. App. 649, 652 (4 SE2d 700) (1939). The defense of legal accident is confined to occurrences which take place in the absence of negligence and for which no one would be liable. *Chadwick v. Miller*, 169 Ga. App. 338, 344 (1) (312 SE2d 835) (1983). "A request to charge the jury must be legal, apt, and precisely adjusted to some principle involved in the case, and be authorized by the evidence. [Cit.]" *Keno v. Alside, Inc.*, 148 Ga. App. 549, 553-554 (5) (251 SE2d 793) (1978). Since the evidence is undisputed that human agency intervened to lay the gas line and electrical conduit through which the natural gas flowed with the end result of the explosion at appellee's facility and since there was evidence of negligence, the trial court did not err by refusing to charge the jury on these issues.

(b) AGL contends the trial court erred by inadequately charging the jury on foreseeability. AGL argues that the trial court's charge failed to instruct the jury that a defendant is not bound to foresee or anticipate unusual or exceptional occurrences and that the charge failed to contain a warning that hindsight is not the proper way to determine foreseeability. The trial court charged the jury that the defendants could be held liable only for the natural and probable consequences of acts which reasonably could have been foreseen "as the natural, reasonable, and probable consequences of the original negligent act." Although the trial court did not specifically charge the jury on 'hindsight,' the charge as a whole properly emphasized to the jury that they should look to the circumstances existing at the time of the defendants' actions. "Assuming, without deciding, that [AGL's] request[s] to charge [were] correct and pertinent, we find that as the court substantially covered the principles of law requested by [AGL], the court did not err in refusing to charge the jury in the exact language requested." *Kviten v. Nash*, 150 Ga. App. 589, 590 (1) (258 SE2d 271) (1979).

(c) AGL contends the trial court erred by inadequately charging the jury on the proper method to determine the nature of the relationship between it and CCC. This enumeration raises no reversible error. The trial court correctly addressed the tests to be used in determining whether a relationship is one of employer-employee (master-servant) or employer-independent contractor and also instructed the jury on the proper guidelines to be used in considering the written agreement between AGL and CCC. "We conclude that the failure to charge in the exact language requested, where the charge given substantially covered the same as the requested principles did not result in error. [Cit.]" *Jackson v. Dept. of Transp.*, 159 Ga. App. 130, 134 (6) (283 SE2d 59) (1981).

(d) CCC contends that the trial court's charge on the issue of comparative negligence was inadequate. We have carefully examined the requested charge and compared it to the charge given by the trial

court. We are satisfied that the charge given substantially covered all the applicable principles and enabled the jury to fairly decide the issue. See *Shipman v. Horizon Corp.*, 151 Ga. App. 242, 247 (8) (259 SE2d 221) (1979), vacated on other grounds, 245 Ga. 808 (267 SE2d 244) (1980); see also *Newman v. James M. Vardaman & Co.*, 162 Ga. App. 878, 882 (3) (293 SE2d 462) (1982).

5. (a) AGL and CCC contend the trial court erred by refusing to admit testimony by David Page, Jr. as to two other instances of electrical arcing. The first instance involved an electric volt which allegedly travelled through a telephone wire to a gas service line and burned holes in the gas line and a water pipe. Page testified he did not actually see the pipes uncovered until after they had been repaired. The second instance involved an electric volt which allegedly arced 18 inches to a gas line, travelled 300 feet to a house and up into first the water heater then a fuse box, and then blew out a commode and bathroom floor before setting the house ablaze. Page undisputedly was not an expert as to electricity and contrary to appellants' contentions, Page's testimony was not offered as evidence of what he saw (holes in pipe line, burnt-out fuse boxes, etc.); rather, it was offered for the inexpert conclusions Page drew as to what caused the havoc he observed. In view of the inexpert conclusions drawn by the witnesses as to dissimilar occurrences, the trial court did not err by refusing to admit this testimony. See *Carlton Co. v. Poss*, 124 Ga. App. 154, 155 (3) (183 SE2d 231) (1971), aff'd 228 Ga. 402 (185 SE2d 803) (1971); *Sparks v. Pine Forest Enterprises*, 174 Ga. App. 598, 599 (331 SE2d 34) (1985).

(b) Error is enumerated in the admission by the trial court of testimony by appellee's expert, Hal Sanders, and appellants' expert, Roy Martin, allegedly speculating whether CCC and AGL employees could have seen the electrical conduit in the trench at the time the gas pipe was installed. Contrary to CCC's argument, Sanders' testimony did not involve what could be seen in the trench; rather, Sanders, a consulting engineer and investigator of gas explosions, testified that based on his examination of the pipe, the relative position of the holes in the pipes, and the materials wrapped around the gas line, it was his expert opinion that the gas line was installed in contact with the electrical conduit. We find no error in the admission of this testimony. OCGA § 24-9-67; see *Wilmington Cabinet Co. v. Autry*, 169 Ga. App. 93, 94-95 (1B) (311 SE2d 519) (1983).

Likewise, we find no error in the admission of testimony on cross-examination by Martin, appellants' expert in electrical engineering familiar with the installation of gas lines. Martin testified that a workman using a shovel rather than a trenching machine had a "50-50 chance" of encountering the electrical conduit and that installation of the dresser coupling on the pipe by excavating the dirt around the

pipe rather than lifting the pipe onto blocks to wrap it "might very well expose" the electrical conduit. We do not agree with appellants that this testimony concerned a matter within the realm of the jury experience or unhelpful to the average juror unfamiliar with the types of equipment available for installing gas lines and the various methods used to wrap dresser couplings on pipes. See *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 332 (1) (319 SE2d 470) (1984). It was within the discretion of the trial judge to determine whether this testimony was relevant and admissible on the issue, and, under the circumstances of this case, we cannot say that he abused that discretion. Accord *R. O. H. Properties v. Westside Elec. Co.*, 151 Ga. App. 857, 858 (1) (261 SE2d 767) (1979). The trial court did not err by admitting this testimony.

6. CCC contends the trial court erred by denying its motion for new trial on the ground that the damages awarded by the jury were excessive. The amount of compensatory damages was stipulated to by the parties and our review of the evidence shows there was sufficient evidence to support the jury's verdict against AGL and CCC for the entire amount of those damages. In connection with punitive damages, " '(w)here a plaintiff pleads and proves actual pecuniary loss for which he or she seeks compensatory damages, and the tort complained of is of such an aggravated nature to warrant a charge on punitive damages [OCGA § 51-12-5], it is permissible for the jury to award both compensatory damages for the injury done and additional or punitive damages to either compensate for wounded feelings or to deter the defendant from similar, wrongful conduct.' [Cit.] 'In such cases the award is not measured as compensation, but is fixed in *an amount necessary to deter future acts*. The rule which requires the amount of punitive damages to evidence a reasonable proportion to the extent of the injury applies to exemplary damages for wounded feelings. [Cit.] The amount, as measured by the enlightened conscience of an impartial jury, which would be required to deter future acts necessarily depends upon the facts of the particular case.' [Cit.]" (Emphasis in original.) *Ford Motor Co. v. Stubblefield*, supra at 341 (7). Considering all the circumstances in this case, we do not find the trial court erred by declining to find the verdict excessive.

*Judgments affirmed. Birdsong, P. J., and Carley, J., concur in the judgment only.*

DECIDED OCTOBER 18, 1985 —
REHEARING DENIED NOVEMBER 20, 1985 — 

*Steven J. Kyle*, for appellant (case no. 70344).
*Alan F. Herman, Julia B. Jagger, Hugh E. Wright*, for appellant (case no. 70345).

*Benjamin S. Williams, K. Marc Barre, Jr.*, for appellee.