## 60194. ACKERMAN/ADAIR REALTY COMPANY v. COPPEDGE.

BIRDSONG, Judge.

Real estate commission based on oral contract. This hotly and often bitterly contested dispute consumed several days of trial and extended to over 1,600 pages of record and transcript. Though the evidence is not seriously in dispute, the interpretation of that evidence was and remains in conflict. Accepting the evidence in the light most supportive of the jury's verdict (*Frost v. Williamson,* 239 Ga. 266, 268 (236 SE2d 615); *Bell v. Brewton,* 139 Ga. App. 463, 464 (228 SE2d 600)), the jury was warranted in accepting the following factual evolvement. In 1973 Adair Realty employed plaintiff-appellee Coppedge as a salesman of commercial real estate. At the time of Coppedge's employment, no written employment contract was utilized by the parties. However, it was shown that an earlier contract form entered into between Adair and other salesmen contained a statement of company policies which were the basis of the oral contract entered into between Coppedge and Adair. Evidence showed that employees of Adair earned commissions on a sliding scale depending upon the value of the commission earned by Adair as a broker's fee ranging from 50% to 65% of Adair's commission. It was established that these commissions were payable based upon sales and rentals as well as the exercise of options contained in option agreements or leases. Because rentals could continue for long periods of time or options to purchase could be exercised long after the lease was procured by a sales agent, the policy provided that agents, even after leaving Adair's sales force, would continue to draw a percentage of the commissions earned by Adair emanating from transactions finalized by the employee while he was a member of the Adair sales team. While employed at Adair, Coppedge negotiated a long term lease between an owner of real estate (Gulf) and a lessee (Central). Gulf had obtained the property as a result of the foreclosure and harbored a desire to sell the property but had been convinced by Coppedge to lease it instead. In 1977, apparently because of the turmoil in employment status and security caused by the death of the principle owner of Adair Realty, numerous salesmen, including the appellee Coppedge, left Adair for employment with other realty firms. At the time of his resignation from Adair, Coppedge indicated that he had three pending real estate transactions which were under negotiation and that in effect, he would be expecting the usual commission when and if these transactions were closed. Coppedge testified that he continued to look to Adair for commissions earned from extant leases in which he had been the procuring agent and for

commissions due because of sales resulting from the exercise of options for which he had been the procuring agent. Coppedge testified that the entitlement to such commissions arose out of the agreements contained in the oral contract of employment entered into between him and Adair's agent who hired Coppedge in 1973.

The lease between Gulf and Central, negotiated in 1975, had paid Coppedge a commission based upon the percentage of the rental paid to Adair as broker's fee. Apparently that commission is not in dispute. However, the lease terms also authorized Central what is termed a "right of first refusal." Thus, if the owner, Gulf, received a bona fide offer of purchase of the property, Gulf was obligated to give Central the right of first refusal at the same terms as the offer from the prospective purchaser. If the right of first refusal was accepted by Central during the term of the lease, Adair became entitled to its broker's fee. After Coppedge left Adair and became affiliated with a competitor, Coppedge approached Gulf and sought to obtain permission to sell the property leased by Central. With Gulf's permission, Coppedge offered the property to Central for slightly more than $1,000,000. Central through its principal officer indicated it had no desire to purchase the property but indicated a strong interest in continuing possession as a lessee either of the owner Gulf or of a new owner if Gulf should sell.

Coppedge then obtained an exclusive right to offer the property for sale. He was successful in obtaining a bid from a New York buyer. This offer was presented to Central and Adair pursuant to the right of first refusal contained in Central's lease. When Adair heard of the bid (its first indication that Coppedge was attempting to negotiate a sale of the property), one of its senior salesmen, Crawford, went to the principal officer of Central and sought to persuade Central to purchase the property under its right of first refusal. An exercise of that right would preserve Adair's right to its broker's fee. Even though Central had no great desire to purchase the property, it was agreed that Crawford would put up half of the good faith money necessary to exercise the right of first refusal ($50,000 or $25,000 each) and that Central would put up $25,000. Under the terms of the right of first refusal, Central, in the event of exercise of the right to purchase, had 90 days in which to close the sale. Crawford's agreement with Central anticipated that the exercise of the right of first refusal would give him (Crawford) 90 days in which to find a purchaser who would lease back to Central, thus leaving Central in its original position. Meantime, Central which earned approximately $8,000 a month from parking fees, could recoup almost all of its $25,000 investment in the event the sale and lease-back took the full 90 days to accomplish. Central notified Coppedge that it was

exercising its right of first refusal. Coppedge then informed the New York buyer that its offer to purchase was null and void. Subsequently, Crawford encountered difficulty in finding a buyer for the property. As the 90-day term came close to expiring, Crawford sought to have Coppedge reactivate the New York buyer with Crawford and Coppedge sharing the commission engendered. Ostensibly because Crawford did not reciprocally offer to co-broker a fee in the event Crawford found a purchaser rather than Coppedge, Coppedge refused to enter into an agreement with Crawford. Gulf which had had a bona fide offer to purchase from the New York buyer, learned from Coppedge that Coppedge did not believe Central had the money or desire to close the purchase, communicated with Central and informed Central that Gulf stood to suffer substantial losses if Central did not close and if so threatened to sue Central. This meant also that Crawford stood to lose his $25,000 portion of the earnest money on the right of first refusal. At the last moment, Crawford (who had been assigned Central's right of first refusal as consideration for putting up his $25,000) located an Atlanta buyer who was willing to purchase the property under Central's right of first refusal and lease the property back to Central. The sale was accomplished by Crawford co-brokering the sale and lease-back with the Atlanta buyer's broker. Gulf paid a broker's fee that included commission to Adair for the exercise of the right of first refusal and a fee to Coppedge's brokerage firm which had represented Gulf as an exclusive agent in the sale of the property. Coppedge then contacted Adair and claimed his 55% of Adair's commission based upon the exercise by Central of the right of first refusal contained in the lease negotiated by Coppedge between Central and Gulf in 1975.

Adair denied any liability for a commission to Coppedge asserting that it was not in the oral agreement of employment to pay for the exercise of a right of first refusal and that Coppedge had not performed one of the essentials under the contract, that of showing absolute loyalty to his employer Adair, but in fact had actively competed against Adair while showing loyalty to his new employer. Coppedge brought suit complaining that Adair had breached an express contract to pay a commission based upon the exercise of the option by Central and another count based upon quantum meruit. Immediately prior to arguments in the case, Coppedge withdrew the quantum meruit count and proceeded upon the express contract count only. The jury returned a verdict for Coppedge in the full amount of the commission plus interest. Adair brings this appeal enumerating four errors. *Held:*

1. In its first enumeration of error, Adair complains that the trial court erred in refusing to charge on the difference in legal

definitions between a "right of first refusal" and an "option." Adair had consistently argued throughout the trial that a "right of first refusal" was not an option and thus was not one of the items included in the oral contract of employment that survived Coppedge's voluntary removal from Adair's sales ranks. Though there was some conflict in the evidence as to whether even an option was an item that survived termination of employment, there was other evidence that Adair did pay its terminated employees the commissions arising out of exercised options procured by the salesman while an employee of Adair. Thus the real question was whether a right of first refusal was tantamount to an option or was a totally different real estate specie transaction. Each side presented an expert witness from whose differing opinion there arose a conflict. Employees of Adair gave the opinion that it did not amount to an option whereas the president of the realtors' association testified that it was a form of option and that in common practice was accepted as such. From its verdict, it is apparent that the jury accepted the appellee's version. In its charge the trial court fully and clearly charged the jury that it must decide under the evidence whether the real estate profession commonly accepted a right of first refusal as a form of option and if it decided that it was a form of option, whether, under the evidence, Adair had promised to pay terminated agents commissions based upon options exercised after the agent left the employ of Adair.

In the factual and legal context of this case, we conclude that the real issue to be decided by the jury was not based upon a legal definition of what constituted an option or what constituted a right of first refusal but whether in the real estate profession, a right of first refusal was or was not an option. There was conflicting evidence as to that point which was properly left to the ultimate decision of the jury. The jury could not have been misled by the lack of legal definition for each expert described in some detail the differences and similarities in the two purchase privileges. The trial court in refusing the requested instruction based its refusal upon the premise that the issue was a factual one for the jury and not a legal issue for the court. We find therefore that the requested charge was not properly adjusted to the issue before the court. It follows that the trial court did not err in refusing a charge that was not apt and precisely adjusted to one of the principal issues in the case. *Seaboard C. L. R. Co. v. Thomas,* 229 Ga. 301 (190 SE2d 898); *Roberson v. Hart,* 148 Ga. App. 343 (251 SE2d 173). Moreover, a failure to give a potentially helpful but not essential charge can be measured for prejudice. Where, as in this case, the jury was fully aware of the distinction of the two types of real estate transactions and the court charged properly upon the real issue, we have no hesitancy in concluding that any error,

assuming error, was harmless. See *Thomas v. Barnett,* 107 Ga. App. 717 (5) (131 SE2d 818). This enumeration lacks merit.

2. Adair's enumeration of error no. 2 pertains to the alleged erroneous admission of evidence. As indicated hereinabove, Coppedge initially brought his complaint in two counts, one dealing with an express contract and the second in quantum meruit. Immediately prior to arguments, Coppedge withdrew his count on quantum meruit. Adair moved the court to withdraw all the documentary evidence pertaining to that count as tending to confuse the jury in relation to the contract issue. The trial court refused the request holding that all 23 documents tendered by Coppedge could shed some light on the issue of whether or not there was a contract between Adair and Coppedge, its limits and the understanding of the parties to the contract. We have examined the documents in question and in the context of the liberal rule of admissibility in this state, we find no error in allowing the jury to have all the questioned documents to aid them in deciding the issue. Questions of the relevancy of evidence are for the court. *Hotchkiss v. Newton,* 10 Ga. 560. When facts are such that the jury, if permitted to hear them, may or may not make an inference pertinent to the issue, according to the view they may take of them, in connection with the other facts in evidence, they are such that the jury ought to be permitted to hear them. *Walker v. Roberts,* 20 Ga. 15 (1); *Brown v. Wilson,* 55 Ga. App. 262 (1) (189 SE 860). That the testimony objected to falls short of proving the fact sought to be established is not in itself sufficient reason for excluding it, provided that it alone or in connection with other testimony, tends to prove the matter in issue. *Livingston v. Barnett,* 193 Ga. 640 (3a) (19 SE2d 385). We find no merit in this enumeration.

3. In its third enumeration of error, Adair contends that the trial court erred in denying a motion for judgment nov and failing to conclude that there was no contract authorizing the payment of commissions based upon the exercise of the right of first refusal. Contrary to the assertions of Adair, we find evidence, though controverted, that would authorize the jury to determine Coppedge justifiably believed that his contract of employment with Adair provided for the payment of a commission for the exercise of options in leases and that the right of first refusal exercised in this case was such an option and that Adair did pay other employees commissions for the exercise of options occurring after leaving Adair's employment. We will not speculate as to what evidence the jury chose to believe or disbelieve; on appeal this court is bound to construe the evidence with every inference and presumption being in favor of upholding the jury's verdict. *Mills v. State,* 137 Ga. App. 305, 306 (223

SE2d 498). Where the testimony of the plaintiff and the defendant is in conflict, the jury is the final arbiter (*Sims v. State,* 137 Ga. App. 264 (223 SE2d 468)), and after the verdict is approved by the trial judge, the evidence must be construed so as to uphold the verdict even where there are discrepancies. *Boatwright v. Rich's,* 121 Ga. App. 121 (173 SE2d 232). See *Cotton v. John W. Eshelman & Sons,* 137 Ga. App. 360, 365 (223 SE2d 757). This enumeration lacks merit.

4. In its last enumeration of error, Adair urges that the trial court erred in denying a judgment nov based upon "undenied" evidence that Coppedge breached his contract with Adair by acting in a disloyal manner in relation to the contract of sale in question. Contrary again to the assertions of Adair, there was substantial evidence that Coppedge assumed throughout the transaction that Adair would receive its full broker's fee, and always considered Adair's rights. The argument and discussion contained in Division 3 of this opinion apply with equal force to this last enumeration of error. For the same reasons, we conclude that this enumeration is without merit.

*Judgment affirmed. Deen, C. J., and Sognier, J., concur.*

ARGUED JULY 7, 1980 — DECIDED SEPTEMBER 30, 1980 —

*D. Lake Rumsey, Jr., Terrence Lee Croft,* for appellant.
*Robert D. McCallum, Jr.,* for appellee.