37152. WRIGHT et al. v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY.

GREGORY, Justice.

This case involves the proper measure of consequential damages in a condemnation case. Appellants owned a 31,842 square foot tract of land in downtown Atlanta, bounded on its east side by West Peachtree Street, on its west side by Spring Street, and on its south side by Pine Street. A 6,302 square foot portion of the tract adjacent to West Peachtree Street was condemned by MARTA for the purposes of constructing a rapid transit station and related facilities. The date of taking was September 8, 1977.[1] Construction began in October of 1977 and was scheduled to be completed by the latter part of 1981.

The proposed construction plan included raising West Peachtree Street 20 feet. Pine Street would no longer cross West Peachtree; that part adjacent to appellants' property would terminate at a 22-foot concrete wall supporting West Peachtree's embankment. No part of appellants' remaining property would continue to have street level access to West Peachtree. However, upon completion of the project, appellants' remaining property would be on the same level as and have direct access to the nearest station entrance 250 feet away. This entrance would be connected by a stairway to West Peachtree Street.

The case was initially referred to a Special Master who awarded appellants $119,800 for the property taken and $161,181 as consequential damages to the remainder. Condemnor appealed and the case was tried before a jury. The jury awarded appellants $116,600.[2]

Appellants contend the trial court's instructions on consequential damages directed the attention of the jury to the value

[1] All parties agree that this was the date of taking. Compare *Woodside v. City of Atlanta,* 214 Ga. 75 (103 SE2d 108) (1958); *R. E. Adams Properties v. City of Gainesville,* 125 Ga. App. 800 (189 SE2d 114) (1972).

[2] MARTA's appraiser testified that the value of the land taken was $18.50 per square foot, or a total of $116,587 for the 6,302 square feet taken.

of the remaining property at some time in the future after the improvements had been completed rather than at the time of taking as mandated by Article 1, Sec. 111, Par. 1 of the Georgia Constitution (Code Ann. § 2-301).

The Court of Appeals affirmed the trial court on the basis of this court's opinion in *Elliott v. Fulton County,* 220 Ga. 377, 381 (139 SE2d 312) (1964), but went on to say: "Nonetheless, we feel compelled to express our view that the subject charge is vulnerable to appellants' attack." *Wright v. MARTA,* 156 Ga. App. 704, 706 (275 SE2d 766) (1980). We agree with the Court of Appeals that the charge as given is vulnerable to appellants' attack and reverse for reasons that follow.

Article I, Sec. III, Par. I of the Constitution (Code Ann. § 2-301) states in pertinent part: "Private property shall not be *taken,* or *damaged,* for public purposes without just and adequate compensation being first paid..." (Emphasis supplied.) Where there is a physical taking of land, just and adequate compensation for the taking is determined as of the date of taking, *Gate City Terminal Co. v. Thrower,* 136 Ga. 456 (2) (71 SE 903) (1911), *Hard v. Housing Auth.,* 219 Ga. 74 (132 SE2d 25) (1963); *Housing Auth. v. Schroeder,* 222 Ga. 417 (151 SE2d 226) (1966).

Where a portion of property is taken for a public use, the condemnee is entitled to compensation for consequential damages to the remainder caused by the taking. This has long been the rule in Georgia, even though the words "or damaged" were first included in the Constitution of 1877.[3] See *Young v. Harrison,* 17 Ga. 30 (1855); *Jones v. Wills Valley R. Co.,* 30 Ga. 43 (1860). Generally speaking, the measure of consequential damages is the diminution, if any, of the market value of the property not taken, caused by the taking of the part which is taken and the devoting of it to the purposes for which it is condemned. *McArthur v. State Hwy. Dept.,* 85 Ga. App. 500 (69 SE2d 781) (1952).[4]

In this case, appellants' two appraisers testified that as a result of loss of access to West Peachtree Street, the value of the remainder

---

[3] Prior to 1877, where there was no physical taking of land municipal corporations were not liable for consequential damages to property caused by raising and lowering streets. *City of Atlanta v. Green,* 67 Ga. 386 (1881); *Campbell v. Metropolitan Street R. Co.,* 82 Ga. 320 (9 SE 1078) (1889); *Smith v. Floyd County,* 85 Ga. 420 (11 SE 850) (1890).

[4] Fair market value is usually, but not always, the yardstick by which compensation is measured. See *Housing Authority of Atlanta v. Southern R. Co.,* 245 Ga. 229 (264 SE2d 174) (1980); *Burke County v. Renfroe,* 64 Ga. App. 395 (13 SE2d 194) (1941).

of appellants' property decreased approximately $150,000. One testified that he expected no consequential benefits from the proximity of the MARTA station because the impact of MARTA had already been reflected generally in market values of property in the area by the time of the taking. The other testified that whether or not access to a MARTA station was going to greatly increase property values could only be a matter for speculation; the system had not been in operation long enough.

MARTA's appraiser testified that the loss of access to West Peachtree would cause the value of the remainder of the property to decrease $65,900, but that would be more than offset by the potential for economic growth caused by the MARTA station. In his opinion, the location of the Civic Center station would have a positive impact on property values. The appraiser did not compute a dollar amount for the special benefits, but testified that they ". . . would at least offset the sixty-five thousand nine hundred, and quite possibly, in my opinion, the benefits would be in excess of fifteen percent as time goes on." While he testified that he was talking about the value determined as of the date of taking, September 8, 1977, he also testified that, "the evaluation of the remaining property in my opinion has to assume the station and all improvements existing at that time . . . and I would suggest as an appraised value of today, in 1979, that that remaining property is in excess today of eighteen dollars fifty cents . . ."[5] "I believe that property . . . from that time to today has increased over this period of time . . ." The trial court charged the jury, in part, that: "The measure of consequential damages, if any exists, for the part of the property not taken, is the difference between the market value of the property not taken before any part is acquired and before the public improvements are made, and the market value of the remainder of the property after the part is acquired and the improvements made."[6] The charge given was based on a charge approved in *State Hwy. Board v. Bridges,* 60 Ga. App. 240 (2) (3 SE2d 907) (1939). This charge clearly directed the jury to look to a time when the improvements would be completed and to value the remainder as of that future date.

*Hard* and *Schroeder,* supra, establish that where property is physically taken, the owner is entitled to the value of the property as of the date of taking. Consequential damage to property is a "taking" entitling the owner to compensation,[7] and where part of a tract is

---

[5] See fn. 2, supra.

[6] For a more complete exposition of the charge given in this case, see the Court of Appeals' opinion, 156 Ga. App. at 704-705.

taken, consequential damages to the remainder must be sought, if at all, during the proceedings to establish the value of the land taken. A judgment of condemnation precludes a subsequent action for consequential damages unless they result from negligent or improper construction. *Whipple v. County of Houston,* 214 Ga. 532 (105 SE2d 898) (1958); *Gilbert v. Savannah, Griffin & N. Ala. Railroad,* 69 Ga. 396 (1882); *DeKalb County v. Cowan,* 151 Ga. App. 753 (261 SE2d 478) (1979).

The diminution in value of the remainder that is the measure of consequential damages should be measured as of the date of the taking. This appellee apparently concedes. Appellee contends that was done in this case because the jury compared the market value of the remainder before the taking with the market value of the remainder on September 8, 1977, as if the MARTA station was completed at that time. It is not clear to us that the jury did this, rather than looking to the value of the property in 1981 when the station was scheduled for completion as the court instructed them to do. However, even if the jury did look to the value of the property on September 8, 1977, as if the MARTA station was completed at that time, we do not agree that would be a proper measure of the after the taking value.

Fair market value is the price a seller who desires, but is not required, to sell and a buyer who desires, but is not required, to buy, would agree is a fair price, after due consideration of all the elements reasonably affecting value. *Housing Authority v. Savannah Iron &c. Works,* 91 Ga. App. 881, 887 (87 SE2d 671) (1955). A buyer contemplating purchase of appellants' remaining property on September 8, 1977, the date of the taking, would take into account the prospect of a completed MARTA station and the potential benefits that would accrue to the property as a result of its access to the station,[8] but would also take into account that the station would not be completed for four years, that the station might or might not have the impact he would hope for, and that the full impact of the station might not be felt for some time after 1981. Thus, he would not necessarily pay on September 8, 1977, a price equal to the price he

---

[7] " '(I)nterfering with access to premises, by impeding or rendering difficult ingress or egress, is such a taking and damaging as entitle the party injured to compensation under a provision for compensation where property is damaged.' *Dougherty County v. Hornsby* [213 Ga. 114 (97 SE2d 300) (1957)] ... The measure of damages is any diminution in the market value of the property by reason of such interference." *MARTA v. Datry,* 235 Ga. 568, 577 (220 SE2d 905) (1975).

[8] We do not mean to imply in this opinion that evidence illustrating future benefits or damages would not be admissible to help establish a value just after the taking.

would pay if the improvements were already completed and the station operational.

The proper measure of consequential damages to the remainder is the diminution, if any, in the market value of the remainder in its circumstance just prior to the time of the taking compared with its market value in its new circumstance just after the time of the taking. *State Hwy. Dept. v. Hood,* 118 Ga. App. 720 (165 SE2d 601) (1968); *Venable v. State Hwy. Dept.,* 138 Ga. App. 788 (227 SE2d 509) (1976).

This court in *Elliott v. Fulton County,* 220 Ga. 377, supra, had before it the question of the propriety of the trial court's charge on the measure of the value of the land actually taken. Any approval of that portion of the *Bridges* charge dealing with consequential damage is *obiter dicta.* We now overrule *State Hwy. Board v. Bridges,* 60 Ga. App. 240, supra, insofar as it purports to furnish a correct instruction on consequential damages.[9]

As we cannot say that the charge of the trial court on consequential damage was harmless, we reverse.

*Judgment reversed. All the Justices concur, except Jordan, C. J., who concurs in the judgment only. Smith, J., disqualified and Weltner, J., not participating.*

DECIDED OCTOBER 27, 1981.

*Harry L. Cashin, Jr., Frank L. Wilson III,* for appellants.
*Frank Love, Jr.,* amicus curiae.
*Charles M. Pursley, Jr., Jo Lanier Meeks,* for appellee.

---

[9] The correctness of that portion of the *Bridges* charge dealing with the value of the land actually taken is not before us.