74281. LEVERETT et al. v. FLINT FUEL, INC.

(357 SE2d 882)

BIRDSONG, Chief Judge.

Wrongful Death — Assumed Risk. The evidence established that Paul Leverett, Jr., his wife Valerie Ann, and their unborn child resided in a mobile home. The residence had been in Leverett's family for some time and had been provided for the younger Leverett by his father, the appellant in this case. The trailer was heated by LP gas furnished by Flint Fuel, Inc. Regulations promulgated by the State Fire Commissioner (Ch. 120-3-16) in substance required a supplier-deliverer of LP gas, at the time of the first delivery of such gas, to inspect the entire LP heating system for safety purposes to include the LP storage tank, feeder line and heating element and equipment. It is uncontested that Flint Fuel was not aware of this regulation and did not inspect the LP system used by the Leveretts in their trailer, when making the first recorded delivery in 1983. Several deliveries were made during the winter of 1983-84 and again during the winter of 1984-85. In December 1984, when the younger Leverett did not appear for work, the trailer was checked to ascertain why Leverett did not appear for work. Forceful entry was required to enter the trailer and Valerie Ann was found dead in bed, the obvious victim of carbon monoxide poisoning, also resulting in the death of the unborn child. Leverett, Jr., was found on the floor still alive. Though he was transported to the hospital and regained consciousness and seemed on the way to recovery, two days later he died of a pulmonary embolism, ostensibly caused by the earlier severe carbon monoxide poisoning.

Expert evidence was offered by both plaintiff and defendant (the father of Leverett, Jr., and Flint Fuel, respectively). Leverett's expert offered evidence that the regulator at the outside tank allowed too high a pressure which would cause the gas burners to burn a little hotter. He also found a crimp in the line leading to the heating units

in the trailer. This expert expressed the opinion these two defects were minor and probably did not contribute significantly to the death of the Leveretts by carbon monoxide poisoning. He found, however, that there was an unvented space heater (probably at least 30 years old) approximately three inches from the trailer wall. The closeness of the heater to the wall caused a lessening of air flow. But most importantly, in the opinion of this expert, the radiants of the space heater had been moved forward in the heater so that the gas jets were releasing gas against the bottom of the radiants rather than up against the tines or projections on the face of the radiants. This caused an improper mixing of the gas and oxygen in the cone of fire and resulted in an impure burn causing a dangerous formation of carbon monoxide gas rather than the usual formation of carbon dioxide. While an ordinary user probably would not have noticed or been aware of the forward displacement of the radiants, the senior Leverett contends in this complaint that had Flint Fuel made the required inspection the displaced radiants would have been observed by the obvious presence of yellow cones of flame (representing incomplete burn) rather than the blue flame (which represented a desirable and more complete burn).

In contrast, the expert offered by Flint Fuel testified that even though the radiants had been moved forward, there still was sufficient space between the gas orifices and the base of the radiant to allow the formation of a full cone and cause a clean (blue) burn. The heating of the radiant across its face or from the bottom up would make no difference as far as heat production was concerned for in either event the heat of the radiants was what provided the heat and not the manner in which the radiant gained its heat. This expert concluded that there was no physical evidence of an improper (incomplete) burn for both experts conceded that an incomplete burn would cause an excessive amount of carbon to form and neither expert found a build up of carbon on the radiants of the suspect unvented space heater. In the opinion of Flint Fuel's expert, if improper ventilation of a closed space was permitted, once an unvented heater commenced burning, thus combining available gas with available oxygen in the space being heated, ultimately all available oxygen would be used up. If no fresh air provided a replenishment of oxygen, the carbon generated would find less and less oxygen to form molecules of carbon dioxide and thus form more and more molecules of carbon monoxide. Thus, this expert concluded that the deaths of the two adults and the unborn infant were caused by an insufficient supply or source of oxygen.

When the bodies were found, the unvented space burner was found burning and the interior of the trailer was very hot, perhaps well over 100 degrees. It was conceded that all windows were closed and that the trailer was well insulated and seemed draft free, al-

though evidence also was offered that even slight draftiness probably would have furnished sufficient oxygen to keep the interior of the trailer safe. Lastly, evidence was offered that at some time prior to this tragic incident, Valerie Ann had been in a local store and was looking at vented and unvented space heaters. She had been advised and warned at that time that unvented space heaters were dangerous and if used, required ample ventilation.

After a trial before a jury on the issues of negligence and comparative negligence, the jury returned a verdict in favor of the defendant, Flint Fuel. The elder Leverett now brings this appeal enumerating as error the refusal of the trial court to admit a written copy of the regulation assertedly violated by Flint Fuel when not making the initial inspection and in failing to charge as requested that contributory negligence is not established simply because the younger Leveretts may not have done all they could have to have precluded what eventually caused their deaths. He also argues the trial court erred in overruling a motion for new trial and in denying the request of a juror to allow the jurors to take notes during the trial. *Held*:

1. We will not address the enumeration of error contending error in the denial of a new trial. Appellant has presented no argument or authority to support such an enumeration. It is therefore deemed abandoned. *Haskins v. Jones*, 142 Ga. App. 153 (1) (235 SE2d 630).

2. In his second enumeration, Leverett contends the trial court abused its discretion when the specific request of a juror to take notes was denied. Prior to trial, counsel for Leverett had offered to furnish pads and pencils to allow the jurors to take notes but this offer was rejected by the trial court. Subsequently when the juror made a request to take notes, the trial court adhered to its earlier ruling.

While there was substantial expert testimony involved in this case, the issues were not complicated by the technical evidence. The proximate cause of death was carbon monoxide poisoning. The issue was whether the presence of the carbon monoxide was proximately caused by the failure of Flint Fuel to make its required inspection, or by the failure of the Leveretts to afford sufficient air circulation while using an unvented space heater. The law is quite clear that in the absence of unusual circumstances, the matter of jury note-taking is left to the discretion of the trial judge. *Post-Tensioned Constr. v. VSL Corp.*, 143 Ga. App. 148, 149 (1) (237 SE2d 618); *Williamson v. State*, 142 Ga. App. 177 (3) (235 SE2d 643). Clearly it would not have constituted error for the court to have allowed note-taking, but neither can we conclude the court abused its discretion in disallowing such note-taking. This enumeration lacks merit.

3. In the third enumeration of error, it is argued the trial court erred in refusing to admit a copy of Chapter 120-3-16 for view by the jury and to allow the jury to have a copy of the chapter with it in the

jury room.

At the beginning of the trial, Flint Fuel argued that this particular chapter had not been promulgated in accordance with the statutory requirements for creation and publication of rules and regulations by the State Fire Commissioner. It was shown that prior to publication there must be a public hearing preceded by publication in a newspaper of general distribution. In the absence of proper publication, there was objection of lawful issue.

We need not pursue the question of whether there had been appropriate publication for, in our opinion, even assuming there had been a sufficient showing of proper promulgation, we find no harmful error in the exclusion of this written word of the regulation. The whole case of the plaintiff-appellant Leverett was that there was a duty to inspect. The contents of the regulation were presented by Leverett, Sr., to Flint Fuel's agent on cross-examination who conceded the applicability of the regulation and that he had not performed the required inspection upon the first delivery nor at any time subsequent thereto. The contents of the regulation were argued by counsel. The trial court charged the chapter and informed the jury that a disregard of the duty imposed by the chapter constituted negligence per se. It is clear therefore that the physical presence of the written word could not have presented the neglected duty any more forcefully nor clearly than was actually presented to the jury.

It is an old and sound rule that error to be reversible must be harmful. *Burger Chef Systems v. Newton*, 126 Ga. App. 636, 639 (191 SE2d 479). Appellant must show error which has hurt him. This court is not an expounder of theoretical law but it administers practical law, and corrects only such errors as have practically wronged the complaining party. See *Brown v. Atlanta*, 66 Ga. 71. We can find no prejudice under the circumstances of this case.

4. In the last two enumerations of error, Leverett contends the trial court erred in denying the request to charge that where there is a duty of ordinary care for one's own safety, one is not contributorily negligent merely because of a failure to exercise that degree of care which would have absolutely prevented injury, for all that is required is the exercise of ordinary care.

Manifestly, it is clear that the jury was required to determine from the law and evidence presented whether the space heater was patently or latently defective and whether the defect caused an excessive and dangerous build-up of carbon monoxide resulting in the deaths of the younger Leveretts. From the facts and law presented, if the jury so found, it could have returned a verdict against Flint Fuel for the jury was told the failure to inspect and eliminate such a latent or patent defect would have been the result of negligence per se by Flint Fuel. However, under the evidence and within the charge, the

jury also could have found that the unvented space heater was not latently or patently defective and was not producing excessive carbon monoxide because of any such defect. The jury could have found under the evidence that the Leveretts failed to provide sufficient circulation which directly caused the build-up of carbon monoxide, after being warned that such ventilation was a commonly known safety requirement in the use of an unvented space heater. Then the jury was advised that if it found negligence on the part of both parties, it was required to determine what was the proximate cause of the carbon monoxide build-up and whether Flint Fuel's concurrent negligence, if present, predominated or was offsetting.

In presenting the legal principles applicable to these factual issues, the trial court charged that the younger Leveretts were bound to exercise ordinary care and diligence in order to avoid the consequences of Flint Fuel's negligence, if any. Though the court charged that Flint Fuel's violation of the safety regulations constituted negligence per se and that ignorance of the law was no excuse, the jury was further charged that the failure to make the inspection had to be the proximate cause of the subsequent deaths, in the light that proximate cause was that one event without which the deaths would not have occurred. The jury was told that if the deaths would have occurred even in the absence of the failure to inspect, then the jury could conclude that the failure to inspect might not have been the proximate cause of the deaths. In this perspective, the jury was told that if the Leveretts by the exercise of ordinary care and diligence could have avoided the consequences to themselves of the use of the space heater and the failure so to exercise such ordinary care was the direct and proximate cause of the deaths, no right of recovery existed for the deaths. Lastly, the jury was charged on the principles of comparative negligence and assumption of risk of an obvious danger (i.e., the failure to provide adequate ventilation). If there existed reason for the Leveretts to apprehend this danger, and this danger would have caused an ordinary prudent person to apprehend reasonably the probability of danger, then the Leveretts were required to take such steps as an ordinary, prudent person would have taken under the circumstances so as to avoid the consequences. If the Leveretts failed to take such precautions so as to avoid harm to themselves, no right of recovery existed. Also, the charge pointed out that even if the Leveretts were aware of a defect in the heater, such knowledge would not constitute an assumption of risk unless it was shown also they had a comprehension of the danger.

We have undertaken to set out in comprehensive summary the pertinent part of the charge dealing with the issues of negligence, both by Flint Fuel and the Leveretts so as to place the request to charge in perspective. As we view the requested charge, such a re-

quest in effect would allow the jury to find that if there was no failure to exercise extraordinary care by the Leveretts for their own safety when they did not discover the latent defect, then the jury could find they may have exercised ordinary care. The request is argumentative. It requires an assumption that the only risk was the latent one caused by the excessive formation of carbon monoxide resulting from the displacement of the radiants, a defect not readily discernible to a non-expert. It assumes, therefore, as appellant in fact argues, that the Leveretts performed no affirmative act that could reflect negligence. As pointed out, however, the jury also could have found that the deaths were caused by an omission, the failure of the Leveretts to afford sufficient ventilation, an act directly attributable to themselves and reasonably apparent even to a non-expert.

It is not error to refuse a requested instruction which is argumentative or favors one party's position by applying facts as legal principles. *Ferry v. State*, 161 Ga. App. 795, 800 (6) (287 SE2d 732). Thus a requested charge should be given only when it embraces a correct and complete principle of law which has not been included in the general instructions given and where the request is pertinent and adjusted to the facts of the case. *Roberson v. Hart*, 148 Ga. App. 343, 345 (251 SE2d 173). Our examination of the charge of the trial court on the issue of negligence reflects that it was full to overflowing. If there were any errors in the charge, they were inconsequential. The Leveretts lost not because of the charge, but because they failed to impress the jury with the justness of their cause. *Allen & Co. v. Boyd & McDavid*, 1 Ga. App. 348 (2) (57 SE 939).

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED MAY 26, 1987.

*Tyron C. Elliott*, for appellants.
*Peter K. Kintz, K. Scott Graham*, for appellee.