76525, 76526. DEPARTMENT OF TRANSPORTATION
v. PETKAS et al.; and vice versa.
(377 SE2d 166)

CARLEY, Judge.
Pursuant to OCGA § 32-3-1 et seq., the Department of Transportation (DOT) condemned property which was owned by Mr. Nick Petkas and others (condemnees). The issue of just and adequate compensation was tried before a jury and the verdict which was returned was in excess of the amount which had been paid into court by DOT. The trial court entered judgment in favor of the condemnees for the difference. Thereafter, DOT filed a motion for new trial. Relying upon OCGA § 32-3-19 (b), DOT also subsequently moved that the judgment in favor of the condemnees be vacated as having been prematurely entered on the jury's verdict. The trial court denied DOT's motion for new trial, but it did order that the judgment in favor of the condemnees be set aside. In Case No. 76525, DOT appeals from the denial of its motion for new trial. In Case No. 76526, the condemnees cross-appeal from the setting aside of the judgment.

## Case No. 76526

1. Because the cross-appeal raises an issue which relates to the existence of appellate jurisdiction over this and other condemnation actions initiated pursuant to OCGA § 32-3-1 et seq., that appeal will be addressed first.

The condemnees enumerate as error the grant of DOT's motion to set aside the judgment which had been entered on the jury's verdict. As previously indicated, in urging that the judgment in favor of the condemnees be set aside as premature, DOT relied upon OCGA § 32-3-19 (b) and, in granting the motion to set aside, the trial court also relied upon that statute. OCGA § 32-3-19 (b) provides: "After the verdict of the jury, the court shall, *in instances where no motion for new trial or notice of appeal is filed within the time provided for by law or where such verdict has been affirmed by a proper appellate court and the remittitur from such court has been made the judgment of the superior court,* enter judgment in favor of the condemnee and against the condemnor in the amount of such verdict, together with the accrued court costs, which judgment shall be immediately credited with the sum of money deposited by the condemnor with the declaration of taking and which shall bear interest as provided in subsection (c) of this Code section. . . ." (Emphasis supplied.) Under DOT's construction of OCGA § 32-3-19 (b), the entry of judgment in this case would have been authorized had *no* timely motion for new trial been filed but, since a timely motion for new trial *was* filed, the entry of judgment was premature and prohibited.

Before addressing the issue of what the statute prohibits, consideration must be given to what the statute authorizes. If read literally, OCGA § 32-3-19 (b) contemplates that the trial court "shall" enter judgment on the jury's verdict in three enumerated instances. First, the trial court "shall" enter judgment "where no motion for new trial. . . . is filed within the time provided for by law. . . ." However, "the time provided for by law" for the filing of a motion for new trial does not begin to run *until* such time as a judgment has been entered on the jury's verdict. Accordingly, the direction that judgment "shall" be entered in this enumerated instance is mere surplusage. A judgment "shall" necessarily have been entered by the trial court in all instances where no timely motion for new trial has been filed, for the very reason that no motion for new trial could otherwise have been timely filed. Second, OCGA § 32-3-19 (b) provides that the trial court "shall" enter judgment "where no . . . notice of appeal is filed within the time provided for by law. . . ." However, "the time provided for by law" for the filing of a notice of appeal likewise does not begin to run *until* such time as a judgment has been entered on the jury's verdict. Accordingly, the direction that judgment "shall" be entered in

this enumerated instance is also mere surplusage. A judgment "shall" necessarily have been entered by the trial court in all instances where no timely notice of appeal has been filed because, absent the entry of such judgment, no notice of appeal could otherwise have been timely filed. Third, OCGA § 32-3-19 (b) provides that the trial court "shall" enter judgment "where such verdict has been affirmed by a proper appellate court. . . ." This portion of the statute is either meaningless at worst, or it is mere surplusage at best. An appellate court has no jurisdiction to hear an appeal from a jury's "verdict" and, therefore, a direction that judgment "shall" be entered where the "verdict" of the jury has been affirmed on appeal is meaningless. If the word "verdict" is to be read as "judgment," then the direction that judgment "shall" be entered by the trial court after an affirmance on appeal is no more than mere surplusage. An appellate court would have no jurisdiction over the appeal *unless* judgment had been entered on the jury's verdict. "[T]here must be an entry of judgment to finally dispose of the case or for the purpose of using the judgment to support an appeal to this court or the Supreme Court. [Cits.]" *Dunagan v. Sims*, 119 Ga. App. 765, 767 (1) (168 SE2d 914) (1969). Accordingly, a judgment "shall" necessarily have been entered by the trial court in all instances where there has been an affirmance of the case by an appellate court, for the reason that, absent the entry of such a judgment, appellate jurisdiction would otherwise be lacking.

"Where possible, we construe language used by the General Assembly in a manner that will not render it meaningless or mere surplusage. [Cit.]" *State of Ga. v. C. S. B.*, 250 Ga. 261, 263 (297 SE2d 260) (1982). "[I]t is nevertheless a cardinal rule of construction that the legislative intent shall be effectuated, even though some of the verbiage of an enactment may have to be eliminated from the text." *Youmans v. State*, 7 Ga. App. 101, 103 (1) (66 SE 383) (1909). It is clear that the legislature intended that the parties to a jury trial which is held in a condemnation action initiated pursuant to OCGA § 32-3-1 et seq. have "the same right to move for a new trial and file a notice of appeal as in other cases at law. . . ." OCGA § 32-3-16 (a). If any effect is to be given to that clear legislative intent, it is not possible to construe the relevant language of OCGA § 32-3-19 (b) as being anything other than meaningless or mere surplusage. As discussed, the right to move for a new trial, to file a notice of appeal and to have an appellate resolution of the case are all premised upon the prior entry of judgment by the trial court on the jury's verdict.

If the language of OCGA § 32-3-19 (b) which *explicitly directs* the entry of judgment in certain enumerated instances is meaningless or mere surplusage, it necessarily follows that there is no validity to DOT's construction of that language as *implicitly prohibiting* the entry of judgment in the unenumerated instances. To give effect to that

construction would lead to the absurd result that there could be no viable appeal in a condemnation action under OCGA § 32-3-1 et seq. Under DOT's interpretation, the mere filing of a timely motion for new trial or a notice of appeal, both of which contemplate the *prior* entry of a judgment on the jury's verdict, would have the anomalous consequence of destroying the underlying viability of that prior judgment as a final appealable order in the case and the proceedings would necessarily end with the otherwise nonfinal and unappealable jury verdict. " 'It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature.' [Cits.]" *Barton v. Atkinson*, 228 Ga. 733, 739 (187 SE2d 835) (1972). " '[W]hen to follow the words of an enactment would lead to an absurdity as its consequences, that constitutes sufficient authority to the interpreter to depart from them.' [Cit.]" *Gillis v. Gillis*, 96 Ga. 1, 9 (1) (23 SE 107) (1895).

The trial court erred in relying upon OCGA § 32-3-19 (b) as authority for setting aside the judgment that it had entered on the jury's verdict. Accordingly, the order of the trial court which sets aside that judgment is reversed and the case is remanded with direction that the trial court reinstate the original judgment.

### Case No. 76525

2. Technically, until such time as the remittitur in Case No. 76526 is made the judgment of the trial court, there is no actual judgment in the case upon which DOT could predicate either its motion for new trial or its appeal from the denial thereof. However, in the interest of judicial economy and fairness to the parties, we will address the merits of the errors that are enumerated in DOT's main appeal, rather than dismiss in contemplation of DOT's refiling of a motion for new trial or notice of appeal subsequent to the reinstatement of the judgment that is mandated by our holding in Case No. 76526.

3. The trial court refused to admit into evidence some 50 of DOT's photographs of the property. This evidentiary ruling is enumerated as error.

At trial, introduction of the photographs was disallowed on the clearly erroneous ground that they had been made subsequent to the date that the property had been taken by DOT. "It is the substantial resemblance, not the date, which should control. [Cits.]" *Camelot Club Condo. Assn. v. Metro Lawns*, 161 Ga. App. 574, 575 (2) (288 SE2d 325) (1982). DOT's photographs, although made subsequent to the date of taking, were shown to be a fair and accurate representation of the property on the date of taking. Accordingly, the photo-

graphs were clearly admissible. See generally *Sackett v. L. L. Minor Co.*, 244 Ga. 375, 376 (2) (260 SE2d 37) (1979).

In denying DOT's motion for new trial, the trial court apparently recognized that its evidentiary ruling was erroneous, but it further concluded that the excluded photographs were cumulative of other evidence which had been admitted in the case. The excluded photographs were not, however, cumulative of any other *photographs* introduced by DOT. The trial court's ruling excluded *all* of DOT's photographic evidence. The proposition that DOT's erroneously excluded photographic evidence should be considered as merely cumulative of the oral testimony is untenable. "A condemnation case can easily become a confusing mass of numbers if the parties do not introduce clear and intelligible evidence to supplement the testimony." Pursley, Ga. Eminent Domain, ¶ 7-10, p. 191 (1982). The trial court did allow the condemnees to introduce photographs to supplement the testimony which supported their contentions as to the just and adequate compensation for the property. DOT, however, was erroneously required to rely solely upon oral testimony to support its own contentions in that regard. The erroneous evidentiary ruling excluding *all* of DOT's photographs was clearly harmful because it "effectively eviscerated [DOT's] theory" as to just and adequate compensation for the property. *Harris v. Collins*, 145 Ga. App. 827, 828 (3) (245 SE2d 13) (1978).

4. The trial court refused to allow DOT to cross-examine witnesses with regard to the fact that, at the time of the taking, a pending lawsuit between two of the condemnees involved the property which was the subject of the condemnation proceeding. This ruling is enumerated as an erroneous curtailment of DOT's right to conduct a thorough and sifting cross-examination.

The condemnees urge that this cross-examination was improper absent any showing by DOT that the legal dispute would have interfered with any sale or lease of the property. This contention ignores, however, that the very purpose of DOT's cross-examination was to determine *whether or not* the legal dispute would have interfered with any sale or lease of the property and, therefore, *whether or not* it would have had an effect on its value. "Fair market value is the price a seller who desires, but is not required, to sell and a buyer who desires, but is not required, to buy, would agree is a fair price, after due consideration of *all the elements reasonably affecting value.* [Cit.]" (Emphasis supplied.) *Wright v. MARTA*, 248 Ga. 372, 375 (283 SE2d 466) (1981). There can be no doubt that the existence of a lawsuit between co-owners of property *could* have an effect on the property's value. "A title which exposes the vendee to litigation is not a good and merchantable one if the danger thereof is apparent and real, not merely imaginary or illusory, which may be apprehended upon

the basis of some fact or truth as to which there can be no ascertainment with reasonable certainty. [Cit.]" *Mrs. E. B. Smith Realty Co. v. Hubbard*, 130 Ga. App. 672, 675 (1) (204 SE2d 366) (1974). Accordingly, DOT's inquiry was clearly relevant because it concerned an existing circumstance which *could* have affected the value of the property.

The condemnees further urge that any relevancy of the cross-examination would be outweighed by its prejudice. If, however, the witnesses had responded in the negative as to the impact of the legal dispute upon the value of the property, the condemnees certainly would not have been prejudiced. If, on the other hand, the witnesses had responded to DOT's inquiries in the affirmative, the relevancy of those affirmative responses to the issue of the value of the property would clearly outweigh any arguable prejudice to the condemnees. " 'A relevant and material fact is not subject to an objection that it would inflame the minds of the jurors.' [Cits.]" *Cagle Poultry &c. Co. v. Busick*, 110 Ga. App. 551, 552 (1b) (139 SE2d 461) (1964). The trial court erroneously abridged DOT's right to a thorough and sifting cross-examination and that error was harmful.

5. The trial court allowed the condemnees to introduce evidence regarding the changes made by DOT in its plans for the property prior to the date of the actual taking. This evidentiary ruling is enumerated as error.

The condemnees urge that this evidence was admissible to rebut the testimony of DOT's experts whose opinions as to value had been based, in part, upon the vacancy of the improvements on the date of taking. However, the *only* relevant inquiry was the value of the property *on the date of taking*. That the value of the property on that date may have been lessened as a result of the anticipated condemnation is totally irrelevant to the issue of just and adequate compensation. "[L]osses occurring to property before the actual date of taking are not compensable in direct condemnation actions. Thus, while there is a diminution in value as a result of anticipated condemnation, no compensation may be paid. [Cit.]" *Josh Cabaret, Inc. v. Dept. of Transp.*, 256 Ga. 749 (3) (353 SE2d 346) (1987). Accordingly, the evidence as to the pre-taking changes in DOT's plans for the property was in no way relevant to rebut the testimony of DOT's experts. " 'Since the compensation to be paid for property condemned is to be determined by its value at the time of its actual taking, a jury can not consider the value at a time prior to the actual time of taking.' [Cit.]" *Will-Ed Enterprises v. MARTA*, 139 Ga. App. 829 (229 SE2d 763) (1976).

The inadmissible evidence undoubtedly caused the jury to infer that DOT was somehow guilty of pre-taking bad faith, and that such bad faith should be given consideration in the determination of the

value of the property on the date of actual taking. Indeed, the condemnees used the inadmissible evidence as a basis from which to argue to the jury that DOT owed "the duty . . . to let them be in a position to make some sort of reasonable business decision rather than sit there with a piece of property they couldn't do anything with for a period of six years, six years, at $100,000 a year, that's $750,000 that they lost while they were waiting for something to happen to that property." The evidence upon which the condemnees predicated this argument was totally irrelevant and prejudicial, and its admission constitutes reversible error. By the admission of this evidence, the condemnees were erroneously allowed to raise allegations of DOT's pre-taking "bad faith . . . in a forum in which the sole issue [was] just and adequate compensation [as of the date of taking]. [Cit.]" *Department of Transp. v. Franco's Pizza &c.*, 164 Ga. App. 497, 498 (1) (297 SE2d 72) (1982). That the condemnees were "unable to rent the [improvements] on the property once the condemnor announced its plans to take the property . . . [is] a 'loss' [which] is not compensable. [Cits.]" *Collins v. MARTA*, 163 Ga. App. 168, 170 (6) (291 SE2d 742) (1982).

6. DOT enumerates as error the trial court's exclusion of statistical evidence concerning the occurrence of actual traffic mishaps at the intersection where the property was located.

It is the condemnees' contention that the effect of this ruling was only to exclude evidence which was merely cumulative of other evidence which had been admitted regarding the existence of traffic and safety problems at the intersection. A review of the record reveals, however, that the excluded report was not merely additional evidence as to the general existence of "traffic and safety problems" at the intersection. It sought to quantify and to clarify those general traffic problems by showing exactly how many actual mishaps had occurred at the intersection. The condemnees were allowed to show that the property was presumably benefited by the intersection's high traffic count, and DOT was likewise entitled to show that that high traffic count was not an entirely advantageous element. The value of property located at a known high traffic-mishap intersection may differ from the value of property which is located at an intersection which presents only such general "traffic and safety problems" as are usually associated with a high-traffic count. Cf. *Department of Transp. v. Whitehead*, 169 Ga. App. 226, 231 (4) (312 SE2d 344) (1983), aff'd 253 Ga. 150 (317 SE2d 542) (1984).

Thus, the trial court's ruling had the erroneous and harmful effect of preventing DOT from introducing relevant evidence as to an element "reasonably affecting value. [Cit.]" *Wright v. MARTA*, supra at 375. " 'Evidence which, in connection with other evidence, tends, however slightly, to prove, explain, or illustrate a fact, even though it

is not sufficient, standing alone, to sustain a finding of such fact, is relevant, has probative value and is admissible as against objection as to its relevancy and probative value; doubt as to the latter should be resolved in favor of admission and against exclusion, sufficiency not being a test or condition of admissibility. [Cits.]' [Cits.]" *Department of Transp. v. Whitehead*, supra at 231 (4).

7. Error is enumerated as to the trial court's ruling which allowed the condemnees to elicit testimony concerning the denial of certain permits to them by the City of Atlanta.

This evidence was totally irrelevant. "Although the presence or absence of a special use permit may reflect upon the value of a piece of property and thereby affect the amount of compensation to be paid for it, a condemnation proceeding is not the proper forum to litigate the denial of an application for such a permit. [Cit.]" *United Waste v. Fulton County*, 184 Ga. App. 694, 698 (4) (362 SE2d 476) (1987). The record shows that this evidence was specifically admitted for the purpose of implicating DOT in the denial of the permits. The trial court overruled DOT's objection to the evidence when the condemnees urged that its introduction "would be permissible if it relates to [DOT]" and, thereafter, one of the condemnees' witnesses responded in the affirmative when the trial court itself asked if the permits had been "held up because of the alleged condemnation of the property." Moreover, the condemnees argued to the jury that "[i]t came from the witness stand . . . his Honor asked did the fact that [the property] was under condemnation . . . have anything to do with [the condemnees' inability] to get permits and the answer is yes, it sure did. . . ." The evidence upon which the condemnees predicated this argument was irrelevant and erroneously admitted. "Assuming that the DOT did influence the [permit] decisions, the final, official decisions to deny [the condemnees' permit] requests were made by the [City of Atlanta]; it was [the City], not the DOT, that was to be held accountable for those [permit] decisions." *Department of Transp. v. Poole*, 179 Ga. App. 638, 639 (1) (347 SE2d 625) (1986).

The harm occasioned by the admission of this irrelevant evidence is apparent. It undoubtedly caused the jury to infer that the denial of the permits, insofar as it was attributable to DOT's proposed condemnation, should be given consideration in determining the value of the property on the date of taking. Thus, the trial court's erroneous evidentiary ruling had the harmful effect of allowing the condemnees to recover "from the DOT . . . what [they] might have earned had [they] sought the proper relief in a timely manner from the party that actually denied [them] the opportunity to use [their] property as [they] desired." *Department of Transp. v. Poole*, supra at 639 (1).

8. Remaining enumerations which are not otherwise discussed have been considered. None of them, however, constitutes reversible

error.

9. In considering the general grounds on appeal, "this court is bound to construe the evidence with every inference and presumption being in favor of upholding the jury's verdict. [Cit.]" *Felton v. Mercer*, 149 Ga. App. 358, 360 (1) (254 SE2d 398) (1979). However, this principle has no application in the consideration of enumerations wherein the trial court's evidentiary rulings are asserted to be erroneous. Resolution of questions of fact by the jury does not insulate the trial court's legal rulings on the admissibility of evidence from appellate scrutiny. If the jury was allowed to find facts based upon evidence which was erroneously admitted or in the absence of evidence which was erroneously excluded, the judgment entered on that verdict must be reversed. Here, for the reasons discussed, the trial court committed numerous errors whereby the condemnees were allowed to introduce evidence which was irrelevant to the issue of the value of the property on the date of taking and whereby DOT was not allowed to introduce evidence which was relevant to that issue. Those errors were clearly harmful. Accordingly, the trial court erred in denying DOT's motion for a new trial.

*Judgment reversed in Case No. 76525. Judgment reversed and case remanded with direction in Case No. 76526. Birdsong, C. J., Deen, P. J., McMurray, P. J., Banke, P. J., Pope, Benham and Beasley, JJ., concur. Sognier, J., dissents.*

SOGNIER, Judge, dissenting.

Construing the evidence in favor of upholding the jury's verdict, *Ackerman/Adair Realty Co. v. Coopedge*, 155 Ga. App. 903, 907 (3) (273 SE2d 645) (1980), and bearing in mind the well established rule that a judgment will not be disturbed where there is any evidence in the record to sustain the verdict, in the absence of some material error of law, *Bullock v. Bullock*, 178 Ga. App. 336, 337 (343 SE2d 121) (1986), I must dissent from the majority's reversal of the verdict in Case No. 76525 since evidence supporting the verdict is present in the record and I find no material errors mandating reversal.

1. The trial court refused to admit approximately 50 photographs depicting the subject property which were shot by a DOT employee shortly after the date of taking. The issue on appeal is not whether the photographs should have been admitted, since both I and the trial court agree with the majority that it would have been better to have admitted the photographs. The issue for determination is whether the improper exclusion of this evidence constituted a material error mandating reversal. "It is incumbent upon the reviewing court to determine if the mistake was of sufficient magnitude to require a new trial. [Cit.]" *Dual S. Enterprises v. Webb*, 138 Ga. App. 810, 812 (3) (227 SE2d 418) (1976).

The record reveals that while no photographs depicting the property during that time frame were admitted, there was extensive testimony describing the condition of the property: the DOT employee who photographed the scene testified in depth detailing the view he had witnessed while shooting the photographs and other witnesses also testified at length about the delapidated condition of the property and the improvements thereon. Despite this oral testimony, the majority nevertheless deems it necessary to reverse the jury's verdict because no other *photographs* were admitted into evidence. I can find no rule of evidence, nor does the majority cite one, that photographs occupy some higher level of evidence than oral testimony so that the one can never adequately substitute for the other. Thus, even though there may be truth in the popular adage that a picture is worth a thousand words, where the "thousand words" are present, as here in the transcript, the absence of the picture does not constitute reversible error under this State's law. Rather, construing the other evidence at trial to uphold the verdict, *Ackerman/Adair Realty Co.*, supra, I must concur with the trial court's determination that because there was other evidence cumulative of the excluded evidence, see generally *Central of Ga. R. Co. v. Luther*, 128 Ga. App. 178, 185 (6) (196 SE2d 149) (1973), the failure to admit the DOT's photographs does not require reversing the jury's verdict. See generally *Whitehead v. Cogar*, 180 Ga. App. 812, 813 (1) (350 SE2d 821) (1986).

2. The trial court refused to allow the DOT to cross-examine two witnesses regarding a lawsuit between two of the condemnees or to allow the DOT to introduce into evidence the voluminous record of that lawsuit. The majority concurs with the DOT that since a jury is allowed to consider "all the elements reasonably affecting value" under *Wright v. MARTA*, 248 Ga. 372, 375 (283 SE2d 466) (1981), this testimony and documentary evidence should have been admitted so that the jury could take into consideration whether a prospective purchaser of the property as of the date of taking might have been negatively affected by the existence of the lawsuit. Condemnees, on the other hand, argue that evidence regarding litigation among themselves was not admissible as an element affecting value since *no* evidence was introduced or proffered that the dispute would have reasonably affected or impacted on any sale or lease of the property. Secondly, the condemnees point to the extreme confusion introducing such other litigation would create which, along with the prejudicial effect of that evidence on the jury, would far outweigh its relevancy.

This court has held that the admission of evidence of factors which may reasonably influence a prospective purchaser's decision is a matter within the discretion of the trial court. *Macon-Bibb County &c. Auth. v. Reynolds*, 165 Ga. App. 348, 350-351 (299 SE2d 594) (1983); see also *Department of Transp. v. Sequoyah Land Invest-*

*ment Co.*, 169 Ga. App. 20, 21 (2) (311 SE2d 488) (1983). I find no abuse of the trial court's discretion here. A careful review of the record supports the trial court's determination that the DOT did not demonstrate how this evidence was relevant to the issue of value, especially in view of the confusion caused by introducing the record in that litigation into a complex and bitterly contested condemnation suit as well as the prejudicial impact on the jury of evidence of infighting among the condemnees. "A trial judge has the discretion to exclude even relevant evidence if he finds that its probative value is substantially outweighed by the risk that its admission will unduly prejudice or mislead the jury or confuse the issues being tried. [Cits.]" *Kilpatrick v. Foster*, 185 Ga. App. 453, 456 (3) (364 SE2d 588) (1988). I would find no reversible error in the trial court's refusal to admit this evidence. See generally *Kane v. Cohen*, 182 Ga. App. 485, 487 (2) (356 SE2d 94) (1987).

3. The DOT's experts testified that their opinions as to the value of appellees' property were based in part on the fact that the improvements on the property were vacant on the date of taking. In rebuttal, condemnees were allowed to testify that they had difficulty trying to lease the improvements on their property during the six-year interval between the public announcement of the DOT's plans and the actual date of taking because of the DOT's many changes in plans and that due to the vacancy of the improvements, the appearance, though not necessarily the value, of the property had dramatically deteriorated. The majority finds that this evidence was inadmissible under *Josh Cabaret, Inc. v. Dept. of Transp.*, 256 Ga. 749 (3) (353 SE2d 346) (1987) and "undoubtedly caused the jury to infer that DOT was somehow guilty of pre-taking bad faith," citing in support of this statement language from appellees' closing argument. Aside from the fact that the cited language has been taken out of context (appellees' counsel was not arguing appellees should receive compensation for pre-taking damages: he was urging the jury not to be misled about the true value of the property by the property's dilapidated appearance after six years of neglect), the record clearly discloses no objection was interposed by the DOT to this allegedly improper argument. Any error stemming from that language was waived. *Saxon v. Toland*, 114 Ga. App. 805, 806 (3) (152 SE2d 702) (1966).

As to the actual testimony at trial, the record is clear that appellees were not litigating an inverse condemnation suit against the DOT. Nor were they seeking compensatory damages for any losses incurred in the period prior to the date of taking. What is clear is that *Josh Cabaret*, supra, is totally inapposite here. As to the inference that the DOT was "somehow guilty" of pre-taking bad faith, there is no evidence whatsoever in the record that the DOT defrauded appellees or acted outside its official capacity when it altered the plans in-

volving appellees' property in the years prior to the taking. Rather, the record fully supports the trial court's determination that the evidence considered objectionable by the DOT and the majority was relevant and admissible both as evidence relating to the value of the property as of the date of taking and as rebuttal evidence to the testimony by the DOT's experts.

While the DOT evidently believes that the inevitable response of any jury informed of the DOT's pre-taking activities will be to impute bad faith and fraud to the DOT, I do not agree that the hostility the DOT imputes to juries renders inadmissible evidence relevant to the value of the condemned property as of the date of taking, especially where, as here, the evidence is necessary to rebut testimony by the DOT's own experts using the effect of the pre-taking activity as a basis for a lower value for the property. The rule is too well established that where evidence is pertinent and admissible, it cannot be excluded merely because it would be prejudicial. *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 339 (4) (319 SE2d 470) (1984). Accordingly, I find no reversible error in the admission of this evidence. See generally *Rosenthal v. Hudson*, 183 Ga. App. 712 (2) (360 SE2d 15) (1987).

4. The majority determines the jury's verdict must be reversed because the trial court excluded the DOT's "quantifying and clarifying" statistical evidence regarding actual traffic accidents at or near the Piedmont-Lindbergh intersection where appellees' property is located. This was not some hotly contested issue at trial which required reams of statistical evidence to persuade the jury. The DOT's detailed compilation of statistics was cumulative of other evidence regarding the well known and uncontroverted traffic and safety problems at this intersection. Under the circumstances of this case, I cannot understand how the majority can hold that the trial court's exercise of its discretion by refusing to admit repetitive evidence regarding a minor undisputed evidentiary matter "practically wronged" the DOT so as to mandate reversal of the jury's verdict. See *Leverett v. Flint Fuel*, 183 Ga. App. 75, 78 (3) (357 SE2d 882) (1987).

5. Regarding the testimony relative to the City of Atlanta's denial of building permits, the record consists of Robert Batcher's statement that they had decided to abandon a building project on the property because "[w]e couldn't get any permits to do anything to the building," and James Beak's statement during his explanation of the potential value of a building on the property that "the building could structurally be used if we could get a permit to use the building." Beak's follow-up statement was stricken by the trial court on hearsay grounds. The record clearly reveals that there was no other testimony by *witnesses* on this matter.

As to the comments cited by the majority which were made dur-

ing trial by counsel and trial court on this matter, the question posed by the trial court to a witness, and the comments made by appellees' counsel during argument before the jury, the record discloses that the DOT failed to make any objections, motions for mistrial, or requests for jury instruction. Thus, the DOT waived any error in the comments by trial court and counsel during trial, see *Palmer v. Stevens*, 115 Ga. App. 398, 401 (5) (154 SE2d 830) (1967); *Saxon*, supra at 806-807 (5); waived any error in the trial court's questioning of witnesses, see *Pulliam v. State*, 196 Ga. 782, 790-791 (6) (28 SE2d 139) (1943); and waived objection to the alleged improper arguments. *Saxon*, supra at 806 (3).

Turning to what the transcript reveals was actually said by witnesses at trial, I cannot agree with the majority that there is any merit in the DOT's assertion that the admission of Batcher's and Beak's statements constitutes reversible error under *Department of Transp. v. Poole*, 179 Ga. App. 638, 639 (1) (347 SE2d 625) (1986). The case sub judice stands in striking contrast to the situation in *Poole*, in which we held that the trial court had erroneously allowed the condemnee to introduce evidence showing that the denial of her zoning requests made more than 10 years before the date of taking had been influenced by the DOT in an attempt to obtain her property at a lower cost. As the quotations from the transcript reveal, no *witness* in the case sub judice indicated or otherwise implied that the DOT was responsible for or had any influence over the decision denying the permits or even that there was any impropriety in the denial of those permits so as to intimate that the condemnees were relitigating the issue in the condemnation proceeding. The only remarks intimating such matters were made by trial court and counsel and cannot serve as the basis for reversal where no objection was made. *Palmer, Saxon, Pulliam*, supra.

" 'Questions of relevancy of evidence, which include the issue of materiality, are for the [trial] court, and in the absence of an abuse of judicial discretion, this court will not interfere.' [Cit.] '[B]road discretion is reposed in the trial court whose decision will not be disturbed except in cases demonstrating a clear abuse of that discretion.' [Cit.]" *Metropolitan Property &c. Ins. Co. v. Shepherd*, 166 Ga. App. 300, 301 (1) (304 SE2d 74) (1983). I find no abuse of the trial court's discretion in admitting this testimony.

6. Based on the above discussion and my review of the remaining enumerations, I can find no reversible error in the trial court's order denying the DOT's motion for new trial. Since I would affirm the judgment in Case No. 76525, I respectfully dissent to the majority's opinion in that case.

646

Decided November 29, 1988 —
Rehearing denied December 15, 1988 — 

Weiner, Dwyer, Yancey & Mackin, Dennis S. Mackin, Beryl H. Weiner, Michael J. Bowers, Attorney General, for appellant.

Peek & Whaley, J. Corbett Peek, Jr., James Garland Peek, Grizzard, Simons & Martin, D. Michael Sweetnam, Warren W. Wills, Jr., for appellees.